**K. BELL & ASSOCIATES, INC.,**
**Plaintiff–Appellee,**

v.

**LLOYD'S UNDERWRITERS,**
**Defendant–Appellant.**

**No. 1080, Docket 95–7837.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 13, 1996.

Decided Sept. 23, 1996.

William R. Fried, New York City (Leo W. Fraser, III, Barbara S. Agulnek, Mendes & Mount, on the brief), for Defendant–Appellant.

Steven L. Barkan, New York City (Armand P. Mele, Lilly, Sullivan, Barkan & Junge, P.C., on the brief), for Plaintiff–Appellee.

Before: MAHONEY, WALKER, and CALABRESI, Circuit Judges.

WALKER, Circuit Judge:

This appeal arises out of a claim that plaintiff K. Bell & Associates, Inc. ("Bell"), a licensed insurance broker in New York, made against its professional liability insurer, defendant Lloyd's Underwriters ("Lloyd's"). The New York Supreme Court for the County of New York had established Bell's liability to a third party, American Marine Insurance Group, Inc. ("AMIG"), because Bell failed to forward to the proper underwriters insurance premiums paid by AMIG to Bell and failed to pay AMIG reinsurance recoverables obtained by Bell on AMIG's behalf from those same underwriters in violation of New York Insurance Law § 2120. The present appeal requires us to decide whether Bell's liability to AMIG is covered under the insurance policy that Bell had with Lloyd's and, specifically, to interpret certain of the policy's provisions that exclude coverage.

The United States District Court for the Southern District of New York (Kathleen A. Roberts, *Magistrate Judge* )[1], rejected

---

1. On March 2, 1994, after some initial proceedings, the parties consented to have a United States Magistrate Judge conduct all further pro-

Lloyd's' contention that Bell's claim was excluded from the policy's coverage and denied Lloyd's' motion for summary judgment. Lloyd's now appeals, and we vacate and remand.

## BACKGROUND

Lloyd's issued to Bell an insurance policy covering errors and omissions by insurance brokers and agents (the "Insurance Policy" or "Policy") for the period between September 6, 1984 and September 6, 1985. The Policy provided that Lloyd's would

indemnify [Bell] for all sums which [Bell] shall become legally obligated to pay as damages by reason of any negligent act, error or omission committed or alleged to have been committed by [Bell] ... which arise out of the conduct of [Bell's] professional activities as Insurance Brokers, Insurance Agents or General Insurance Agents.

This broad provision of coverage, however, was subject to certain exclusions including, among other things, claims arising out of both (1) the commingling of monies or accounts [Exclusion (f)] and (2) the insolvency of any insurance company from which Bell had obtained insurance coverage on behalf of a client [Exclusion (g)]. The Policy also was limited to claims that were made during the policy period and that resulted from conduct that, as of the effective date of the Policy, Bell had no knowledge would result in claims. We now turn to the circumstances leading to Bell's liability to AMIG that formed the basis of Bell's insurance claim against Lloyd's.

At some point prior to 1980, AMIG, a marine insurance underwriter, contacted Bell, AMIG's broker, to obtain reinsurance on some of AMIG's existing policies. Bell secured for AMIG reinsurance (the "Reinsurance Policies") for the years 1980, 1981, and 1982 from a group of foreign underwriters (the "Foreign Underwriters") through a series of brokers located in London (the "London Intermediaries"). Under this arrangement, AMIG would pay its premiums on the Reinsurance Policies to Bell, Bell would forward the premiums to the London Intermediaries, and the London Intermediaries would forward the premiums to the Foreign Underwriters. Similarly, to the extent that the Foreign Underwriters owed money to AMIG on claims under the Reinsurance Policies, the payments would travel in the opposite direction: each Foreign Underwriter would pay its portion of the loss to the London Intermediaries, the London Intermediaries would forward these recoverables to Bell, and Bell would forward them to AMIG.

In August 1985, AMIG sued Bell, the London Intermediaries, and the Foreign Underwriters in the Supreme Court of New York County. AMIG alleged that it had not received over $5 million in reinsurance recoverables due to it. Three of AMIG's causes of action (unfortunately misnumbered in the complaint) named Bell as a defendant: "the Sixth" claimed that Bell had breached its contractual responsibility and fiduciary duty by failing to forward to AMIG reinsurance recoverables that Bell had received from the Foreign Underwriters; "the Seventh" asserted that Bell had breached its contract and its fiduciary duty by failing to collect and to remit to AMIG reinsurance recoverables prior to the insolvency of some of the Foreign Underwriters; and "the Ninth" alleged that Bell had been negligent in obtaining reinsurance from some of the Foreign Underwriters that were alleged to be "of dubious financial reliability."

Over four years later, AMIG filed its note of issue pursuant to N.Y. CPLR 3402, thereby placing the case on the state supreme court's trial calendar. Bell thereafter moved to strike the note of issue, and the state supreme court (Beverly S. Cohen, *Justice*) denied the motion on April 24, 1991. On June 14, 1991, Bell moved for reargument of its motion to strike. In response, AMIG cross-moved for summary judgment and Bell filed its own cross-motion for partial summary judgment. Bell acknowledged receiving $159,649 from one of the London Intermediaries, but argued that the note of issue should be struck so that Bell could obtain discovery from the intermediary as to how much of that sum was owed to AMIG.

ceedings in this action, including trial, pursuant to 28 U.S.C. § 636(c).

AMIG contended that it had forwarded premiums in the amount of $2,213,128 to Bell but that Bell had forwarded only $1,344,074 of that amount to the London Intermediaries. AMIG therefore alleged that it was due from Bell the net difference of $869,054, representing premiums received by Bell but not passed on to the Foreign Underwriters, plus the $159,649 in recoverables that the London Intermediaries had forwarded to Bell but that were not received by AMIG, for a total of $1,028,703, plus prejudgment interest.[2] Subsequently, AMIG admitted that its claim should be reduced by $342,434, for a total claim of $686,269.

In a written memorandum decision dated November 18, 1991 (but for some reason not docketed until March 10, 1992), the state supreme court granted summary judgment to AMIG. Justice Cohen found that

AMIG, through affidavits and documents, has established, as nearly as practicable, that premiums of $2,213,128.00 were paid to Bell between May 14, 1990, [sic] and August 25, 1983. In its cross-moving papers, AMIG initially alleged that Bell failed to forward $869,054.00 to the London intermediary, Lumsden. In its reply papers, however, AMIG concedes that, as it only credited Bell for $463,221.96, for a payment of $805,656.06, its damages should accordingly be reduced by $342,434.10.

Additionally, the London intermediary remitted to Bell $159,649.00 on an AMIG reinsurance claim in 1984. These later funds were never released to Bell. Bell does not deny receiving these sums, but claims it did not pass that money to AMIG because it could not establish, through the records, that these moneys definitively belonged to AMIG.

Bell's verified answer is a series of general denials. The affirmative defense, that plaintiff settled with the other defendants and, therefore, Bell is protected by General Obligations Law § 15–108 is not applica-

ble to this claim. As noted, there is no denial that Bell did not forward the insurance premiums. Rather, defendant raises issues as to AMIG's entitlement thereto, and states:

"[s]ignificantly, plaintiffs do not explain their entitlement to return of premiums other than a conclusory statement that they are entitled to those premiums K. Bell did not forward to the London intermediaries."

Finally, Bell argues that even if it did retain the funds, plaintiff has not shown that such retention was improper. Bell avers that these moneys were held so that it could engage in a process known as "settling in account": where-in accounts are debited and credited to reflect premiums paid and claims payable. Upon later information provided by the reinsureds and the foreign intermediaries, funds are transmitted to the reinsurer.

*American Marine Ins. Group v. Central Fire & Gen. Ins.*, No. 24020/85, slip op. at 3–4 (N.Y.Cty.Sup.Ct. Nov. 18, 1991) (citations omitted). After summarizing the facts of Bell's non-payment and Bell's arguments in its defense, Justice Cohen concluded that "Bell's attempt to raise triable issues fall[s] far short of what is required to defeat plaintiff's *prima facie* showing of entitlement to summary relief." *Id.* at 4–5. Justice Cohen then set forth her reasoning.

Insurance Law § 2120 imposes a fiduciary duty upon an intermediary to be responsible "for all funds received or collected in such capacity," and the funds must be held so that the principal's funds are "reasonably ascertainable" from the books and records of the agent. The depositions of the Officers of Bell establish that it cannot produce its records with respect to payment of premiums to account either for the disputed $686,268.90 in unforwarded premiums, or the $159,649.00 remittance. Besides the aforementioned statutory obli-

---

2. AMIG's amended complaint sought damages only for reinsurance recoverables and not for premiums paid by AMIG to Bell and not forwarded to the London Intermediaries. Nonetheless, AMIG sought summary judgment as to both amounts, and the state court's memorandum de-

cision granted judgment as to the premiums as well as to the reinsurance recoverables. *See American Marine Ins. Group v. Central Fire & Gen. Ins.*, No. 24020/85, slip op. at 3 (N.Y.Cty. Sup.Ct. Nov. 18, 1991).

gation to account for these funds, the statute imposes upon Bell, as AMIG's agent, a fiduciary duty (Insurance Law § 2120).

It is well-settled that the burden is on the agent to demonstrate that it has carried out its duties and it transmitted the premium funds promptly, and to turn over to its principal all moneys held by it.

Therefore, in response to plaintiff's *prima facie* case as to the premiums and remittance, Bell's response that it cannot produce the applicable books and records after eleven years is not a defense. The rather lame excuse that, possibly, Bell is engaged in settling the account is simply unpersuasive in view of the length of time this action has been pending. In sum, Bell has not demonstrated that a material issue of fact exists on the issue of its breach of its fiduciary duty to AMIG. The simple fact is that AMIG has asked Bell to account for the moneys and it cannot do so. AMIG is entitled to recover the amount of the unforwarded premiums and the moneys remitted to Bell on its reinsurance claim, plus interest.

*Id.* at 5–6 (citations omitted). While granting summary judgment on AMIG's claims for unremitted premiums and recoverables, Justice Cohen denied summary judgment on the issue of Bell's negligence. The court held that "[t]o recover for losses, in addition to the premiums and remittance moneys, AMIG must demonstrate, *inter alia,* that [its] damages flowed from Bell's breach of duty. [It has] not done so here." *Id.* at 6 (citation omitted). The court also denied Bell's cross-motion for partial summary judgment. After including prejudgment interest, the total judgment in favor of AMIG was in the amount of $1,192,223.77.

In January 1992, Bell wrote to Lloyd's to inform it of the supreme court's entry of summary judgment against Bell. In February 1992, Lloyd's declined Bell's claim for indemnity under the Insurance Policy. In March 1992, Bell and AMIG entered into a settlement, in which Bell agreed, among other things, to pay AMIG $255,000 and to assign to AMIG the right to sue Lloyd's on Bell's claim under Bell's name.

In July 1992, AMIG—in the name of Bell—commenced this action against Lloyd's. Lloyd's moved for summary judgment against Bell on the grounds that Bell's claim was excluded by Exclusion (f) of the policy and that Lloyd's had not waived this defense nor was estopped from claiming it. The district court denied the motion in an opinion and order. *See K. Bell & Assocs., Inc. v. Lloyd's Underwriters,* No. 92 Civ. 5249 (KTD), 1994 WL 250183 (S.D.N.Y. June 1, 1994) (*"Bell I "*). With this victory in hand, Bell then moved for partial summary judgment. In a second opinion and order, the district court rejected Lloyd's remaining defenses, including its defense that the claim was barred by Exclusion (g) of the policy. *See K. Bell & Assocs., Inc. v. Lloyd's Underwriters,* No. 92 Civ. 5249 (KTD), 1995 WL 169013 (S.D.N.Y. Apr. 10, 1995) (*"Bell II "*). After a trial on the remaining issues, the district court entered judgment against Lloyd's for $1,250,000. Lloyd's appeals from this judgment.

## DISCUSSION

Our review of either a grant or a denial of a motion for summary judgment is de novo. *Miner v. City of Glens Falls,* 999 F.2d 655, 661 (2d Cir.1993). "Summary judgment must be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c)). In ruling on a motion for summary judgment,

[a] judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented. The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant].

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Furthermore, a district judge must view the evidence in the light most favorable

to the non-moving party and must draw all inferences in favor of that party. *See Wernick v. Federal Reserve Bank,* 91 F.3d 379, 382 (2d Cir.1996).

██ In the instant case, we are faced with the question of whether Bell's claim against Lloyd's under the Insurance Policy is excluded from coverage by either of the two exclusion clauses. Under New York law, the initial interpretation of a contract "is a matter of law for the court to decide." *Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 299 (2d Cir.1996). Where there are alternative, reasonable constructions of a contract, *i.e.,* the contract is ambiguous, the issue "should be submitted to the trier of fact." *Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 573 (2d Cir.1993). However, if the contract is capable of only one reasonable interpretation, *i.e.,* is unambiguous, we "are required to give effect to the contract as written." *Id.; see Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.,* 84 F.3d 91, 98 (2d Cir.1996); *see also United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.,* 994 F.2d 105, 107 (2d Cir.1993) (applying same rule to insurance contracts).

██ On appeal, Lloyd's repeats its contention that Bell's claim fell within Exclusion (f), under which indemnity is not provided for those claims "arising out of the commingling of monies or accounts, or loss of monies received by [Bell] or credited to [Bell's] account." Lloyd's argues that the state supreme court's decision was grounded in the specific finding that Bell had received but failed to remit funds and that therefore Bell's claim plainly fell within the ambit of Exclusion (f).

To determine the applicability of Exclusion (f) to Bell's claim, we must first determine on what grounds the state supreme court granted judgment to AMIG. The core question, as framed by the district court, is whether Justice Cohen found "Bell liable for failing to produce its financial records *or* for failing to forward and remit premiums and reinsurance recoverables." *Bell I,* 1994 WL 250183 at *7. If, as the district court found, Bell was liable for failing to produce its records, then the district court was correct in denying summary judgment because Exclusion (f) does

not explicitly exclude claims arising from the failure to produce records. *Id.* If, however, Bell was liable because it failed to forward premiums and to remit reinsurance recoverables, then we must consider whether Exclusion (f) applies to Bell's claim. We review the district court's interpretation of the state court decision de novo. *See Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir.1995).

██ We conclude that the state supreme court based its decision on Bell's failure to forward premiums and remit reinsurance recoverables and not on Bell's inability to locate and produce its financial records. Justice Cohen's conclusion that AMIG had made a *"prima facie* showing of entitlement to summary relief" was premised not on Bell's non-production of records, but instead on her determination that Bell had a duty under New York Insurance Law § 2120 to be responsible for the funds it had received as AMIG's intermediary. *See American Marine,* slip op. at 4–5. Section 2120 requires that

(a) Every insurance agent and every insurance broker acting as such in this state shall be responsible in a fiduciary capacity for all funds received or collected as insurance agent or insurance broker, and shall not, without the express consent of his or its principal, mingle any such funds with his or its own funds or with funds held by him or it in any other capacity.

(b) Every reinsurance intermediary acting as such in this state shall be responsible, in a fiduciary capacity for all funds received or collected in such capacity, and shall not, without the express consent of his or its principal or principals, mingle any such funds with his or its own funds or with funds held by him or it in any other capacity.

(c) This section shall not require any such agent, broker or reinsurance intermediary to maintain a separate bank deposit for the funds of each such principal, if and as long as the funds so held for each such principal are reasonably ascertainable from the books of account and records of such agent, broker or reinsurance intermediary, as the case may be.

Thus, under § 2120, an insurance broker has a duty not to commingle funds it received for transmission to an insurance company and has a duty "to keep [such funds] separate and distinct from his own property and promptly to transmit them to the insurance company." 68 N.Y.Jur.2d, *Insurance* § 443 (1988); *see Leterman v. Pink*, 249 A.D. 164, 291 N.Y.S. 249, 254 (1st Dep't 1936) ("The clear duty of any insurance agent is to keep separate and distinct, from his own property, specific premium payments received from a client and promptly to transmit to the insurance companies moneys thus collected."), *aff'd*, 275 N.Y. 613, 11 N.E.2d 781 (1937).

The gravamen of § 2120 is to prohibit the loss or unauthorized commingling of funds by insurance agents, insurance brokers, and reinsurance intermediaries. Under § 2120, it is not a violation for an insurance agent, broker, or reinsurance intermediary to be unable to produce its books and records. Section 2120(c) simply creates a safe harbor whereby an insurance agent need not keep the funds of its principals in separate accounts if the funds held for each principal are readily ascertainable from the books and records of the agent. *See* 68 N.Y.Jur.2d, *Insurance* § 459 (An insurance agent "is not required to maintain a separate bank deposit for the funds of each principal, if and as long as the funds so held for each principal are reasonably ascertainable from the books of account and the records of the agent or broker." (footnote omitted)).

Bell nonetheless argues that "Justice Cohen's decision unequivocally states that the basis for granting AMIG's motion ... was Bell's inability to account for AMIG's funds through Bell's books and records." Brief for Plaintiff–Appellee at 22. This contention is belied by Justice Cohen's actual words: "[I]n response to plaintiff's *prima facie* case as to the premiums and remittance, Bell's response that it cannot produce the applicable books and records after eleven years *is not a defense." American Marine*, slip op. at 5 (second emphasis added). Justice Cohen's reference to *"prima facie* case" indicates that, prior to making any finding as to Bell's failure to produce its books and records, she found that AMIG had demonstrated a right to recover from Bell. Black's Law Dictio-

nary 1071 (5th ed. 1979) (A "prima facie case" is one that "will prevail until contradicted and overcome by other evidence."). Therefore, we conclude that Justice Cohen found that Bell violated § 2120 not because of Bell's failure to produce records, but rather because AMIG's evidence established that AMIG had made premium payments to Bell and that Bell admitted that it had not forwarded those amounts to the London Intermediaries, and because Bell had failed to remit recoverables to AMIG. By finding that the inability to produce books and records was not a defense, Justice Cohen accurately held that, under § 2120, Bell could not raise a defense that it had lost its books and records. Instead, proper maintenance of books and records might have served as a defense against AMIG's cause of action for commingling, pursuant to § 2120(c). We therefore have no difficulty in concluding that the supreme court found that Bell had lost and/or commingled AMIG's funds by failing to forward AMIG's premiums and to remit its reinsurance recoverables.

The district court's belief that "it would have been impossible for Justice Cohen to grant summary judgment to AMIG on this basis" because there were genuine disputes over material issues of fact, *Bell I*, 1994 WL 250183 at *8 n. 13, is beside the point. Our task (and the district court's) is to determine only what Justice Cohen found and not to second guess her ruling. *See generally District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (inferior federal courts do not have jurisdiction to hear appeals from the state courts). The availability of Exclusion (f) to Lloyd's turns on the basis of the supreme court's finding Bell liable to AMIG, and not the correctness of doing so.

Having concluded that Bell was adjudged liable to AMIG because Bell lost or commingled AMIG's funds, we turn to the second question before us and decide whether this conclusion compels a finding that Bell's claim falls within Exclusion (f). Bell argues that, despite Exclusion (f)'s plain language, it does not apply because it is ambiguous and because the law requires that ambiguous insurance contracts be construed in favor of the

insured and against the insurer. *See Loblaw, Inc. v. Employers' Liab. Assurance Corp.*, 85 A.D.2d 880, 881, 446 N.Y.S.2d 743 (4th Dep't 1981), *aff'd* 57 N.Y.2d 872, 456 N.Y.S.2d 40, 442 N.E.2d 438 (1982). Lloyd's response is that the rule of construing ambiguities against the insurer does not apply when the insured is also an insurance company. *Id.* Bell disputes the application of this rule in the circumstances of this case and, because we find Exclusion (f) unambiguous in any event, we do not answer the question.

■ Under New York law, an insurer bears the burden of showing that there is no ambiguity in a policy. *Prince v. ITT Life Ins. Corp.*, 89 A.D.2d 779, 780, 453 N.Y.S.2d 495 (4th Dep't 1982). But as we have noted previously, "a clause may be general without being ambiguous, and even a vague clause may be ambiguous only at its edges." *United Nat'l Ins.*, 994 F.2d at 108. Exclusion (f) may be broad, but we have no difficulty in concluding that it excludes Bell's claim. As we noted above, Justice Cohen plainly found that Bell had violated § 2120, which proscribes losing or commingling the principal's funds. It is reasonable to interpret Exclusion (f) as denying coverage to Bell's claim, and we can discern no reasonable interpretation of Exclusion (f) that would not do so.

■ To avoid being caught by Exclusion (f), Bell argues that it believed (at the time it signed the policy) that the exclusion would not apply if Bell lost the records by which it kept track of whose money it had placed in its bank account. But under New York law, the plain meaning of a clause in an insurance contract is determined according to an objective standard: by looking to the understanding of someone engaged in the insured's line of business. *See Moshiko, Inc. v. Seiger & Smith, Inc.*, 137 A.D.2d 170, 176, 529 N.Y.S.2d 284 (1st Dep't), *aff'd*, 72 N.Y.2d 945, 533 N.Y.S.2d 52, 529 N.E.2d 420 (1988). As a member of the insurance industry, Bell should have understood its obligations under § 2120 and thus known that, absent the maintenance of proper records, its conduct amounted to commingling. Accordingly, because there is only one reasonable construction of Exclusion (f) in the context of this case—that it excludes Bell's claim—we find that Exclusion (f) is unambiguous.

Because we accept Lloyd's argument that by its terms Exclusion (f) bars indemnification of a broker or agent who, like Bell, loses or commingles funds in violation of § 2120, we need not consider Lloyd's alternative arguments that Bell's action (1) is barred because Bell's insurance claim does not fall within the coverage provision of the Insurance Policy or (2) is excluded by Exclusion (g), which excludes claims based on the insolvency of any underwriter that Bell selected for AMIG. Although we agree with Lloyd's that Exclusion (f) may stand as a bar to Bell's claim, we believe that it is premature to enter summary judgment in Lloyd's favor. In opposition to Lloyd's motion for summary judgment, Bell argued that Lloyd's is estopped from denying coverage. The district court denied Lloyd's summary judgment motion on other grounds and therefore did not reach the estoppel issue. Because the district court never reached the estoppel issue and because the issue has not been briefed on appeal, we remand the case to the district court to address this issue in the first instance—assuming, of course, that this issue has not been waived.

## CONCLUSION

For the foregoing reasons, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.