746 A.2d 935

UTICA MUTUAL INSURANCE COMPANY

v.

William Ray MILLER, II, et al.

No. 6709, Sept. Term, 1998.

Court of Special Appeals of Maryland.

Feb. 2, 2000.

Reconsideration Denied March 28, 2000.

374

376

Lon A. Berk (Sandra Tvarian Stevens and Wiley, Rein & Fielding, Washington, DC, Bradford Carney and Royston, Mueller, McLean & Reid, L.L.P., Towson, on the brief), for appellant.

Eugene R. Anderson (Anderson, Kill & Olick, P.C., New York, NY, Michele A. Gallagher and Anderson Kill & Olick, LLP, Washington, DC, on the brief), for appellees.

Argued before MOYLAN, KENNEY, and ADKINS, JJ.

ADKINS, Judge.

We must decide in this appeal whether Utica Mutual Insurance Company, appellant, has a duty to defend William Ray Miller II, appellee, in a tort action. Appellant denied coverage, contending that under the terms of an errors and omissions insurance policy issued to appellee's employer, it has no duty to defend appellee because the underlying case against appellee asserts claims that are expressly barred from coverage. Appellee subsequently filed a suit for declaratory relief in the Circuit Court for Baltimore County seeking, *inter alia,* a declaration that appellant has a duty to defend him in the tort action. On August 31, 1998, the circuit court held a

hearing on cross-motions for summary judgment and held that appellant was required to defend appellee. This appeal followed.

Appellant contends that the trial court erred in determining that it is required to defend appellee because: 1) the "money received" exclusion in the policy bars coverage; and 2) the policy only provides coverage for errors or omissions "in the rendering or failure to render professional services" and that the claims asserted in the underlying tort action do not arise out of professional services. Secondarily, appellant contends that even if it was not entitled to a finding that it had no duty to defend appellee, the trial court erred by not permitting it to conduct discovery before the court ruled on appellee's summary judgment motion.

## FACTS AND LEGAL PROCEEDINGS

Appellee was an employee of J.L. Hickman and Company, Inc., d/b/a IFA Insurance Services ("JLH") from early 1993 until March 1997. As an employee of JLH, appellee served various insurance companies that had entered agency relationships with JLH. His responsibilities included selling and writing insurance policies on behalf of insurance companies, and collecting premiums from and forwarding premiums on behalf of JLH customers who had purchased insurance from insurance companies through JLH.

JLH was covered under an insurance contract for errors and omissions purchased from appellant, covering the period from May 13, 1996, through May 13, 1997. JLH originally applied for liability insurance from appellant for the policy year 1993–1994. On the original application, appellee was listed as an employee of JLH. Additionally, appellee was listed as an employee in the renewal applications for the policy years 1994–1995, 1995–1996, and 1996–1997. After the expiration of the insurance contract, the successor in interest to JLH, North American Risk Management, Inc., ("NARM"), entered into a contract with appellant for an optional extended reporting period for the two-year interval between July 12, 1997, to

July 12, 1999. This policy provided that a claim which is "first made against an insured during the [extended period] for negligent acts, errors, or omissions which take place after the retroactive date ... but before the end of the policy period" would be covered.

JLH was the named insured on the policy. The policy also provided coverage to "[a]ny partner, executive officer, director, or employee of [JLH], while acting within the scope of his or her duties on behalf of [JLH]" and "any person who was formerly an insured ... but only with respect to negligent acts, errors, or omissions committed prior to the termination of such relationship."

On July 23, 1997, Insurance Company of North America ("CIGNA") filed suit against appellee in the Circuit Court for Baltimore County claiming: 1) appellee owed CIGNA an accounting for $326,480.12 that appellee should have collected as premiums on CIGNA's behalf; 2) conversion; 3) breach of fiduciary duty; 4) unjust enrichment; and 5) negligence.

The primary thrust of CIGNA's complaint against appellee was that appellee converted $326,480.12 received as premiums on CIGNA's behalf for his own use. Additionally, CIGNA claimed, *inter alia*, that appellee acted negligently because:

> [Appellee] had a duty to exercise ordinary care in the handling and timely remittance of funds to the CIGNA Companies, and he had a duty to monitor business operations to detect and prevent the diversion and misapplication of funds that occurred here. As a direct and proximate result of the negligence of [appellee], the CIGNA Companies have suffered damages....

Appellee denied the allegations of wrongdoing alleged in the CIGNA complaint. By letter dated August 6, 1997, NARM submitted a copy of the CIGNA complaint to appellant. On August 26, 1997, appellant denied coverage, by letter to appellee, claiming that Exclusion 4 of the insurance contract, the "money received" exclusion, relieved it of any duty to defend. Appellee then filed a third party complaint against appellant,

seeking a declaration that appellant had a duty to defend him in the underlying lawsuit.

On August 31, 1998, Judge Levitz held a hearing on the parties' cross motions for summary judgment. In granting appellee's motion for summary judgment, Judge Levitz determined that "[b]ased on the allegations in the [CIGNA] complaint, that have been made against [appellee], I believe [appellant] is required to provide him with coverage...." The ruling was entered on September 3, 1998. This appeal was timely filed.

Additional facts will be added as necessary to supplement our discussion.

## DISCUSSION

### a.

### Standard of Review

Summary judgment is appropriate where there is no dispute of material fact and the moving party is entitled to judgment as a matter of law. *See* Md. Rule 2–501. The review of the grant of summary judgment involves the determination of whether a dispute of material fact exists, and whether the trial court was "legally correct." *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.,* 335 Md. 135, 144, 642 A.2d 219 (1994).

Although "summary judgment in a declaratory judgment action is 'the exception rather than the rule,' summary judgment may be warranted where there is no dispute as to the terms of an insurance contract but only as to their meaning." *Nationwide Mut. Ins. Co. v. Scherr,* 101 Md.App. 690, 695, 647 A.2d 1297 (1994), *cert. denied, sub nom., Scherr v. Nationwide,* 337 Md. 214, 652 A.2d 670 (1995) (quoting *Loewenthal v. Security Ins. Co.,* 50 Md.App. 112, 117, 436 A.2d 493 (1981)). In the instant case, the parties do not dispute the terms of the insurance contract, but disagree as to the proper interpretation of the contract. Thus, because appellant's duty to defend rests on the construction and interpretation of the contract, resolution by summary judgement is appropriate.

## b.

## Duty to Defend

The duty to defend an insured is broader than the duty to indemnify. *See Litz v. State Farm Fire and Cas. Co.,* 346 Md. 217, 225, 695 A.2d 566 (1997). Indeed, Maryland courts have recognized liability insurance policies as "litigation insurance ... protecting the insured from the expense of defending suits brought against him." *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 410, 347 A.2d 842 (1975). In *St. Paul Fire & Marine Ins. Co. v. Pryseski,* 292 Md. 187, 438 A.2d 282 (1981), the Court of Appeals articulated the following test:

> In determining whether a liability insurer has a duty to provide its insured with a defense in a tort suit, two ... questions ordinarily must be answered: (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage?

*Id.* at 193, 438 A.2d 282. To answer these questions, a court "must ascertain the scope and limitations of coverage under the ... insurance policies and then determine whether the allegations in the [underlying] action would potentially be covered under those policies." *Aetna Cas. & Sur. Co. v. Cochran,* 337 Md. 98, 104, 651 A.2d 859 (1995).

In applying the first part of the *Pryseski* test, we turn to the language of the insurance contract to determine the scope of coverage. In analyzing an insurance contract, we shall:

> construe [the contract] as a whole to determine the parties' intentions. Words are given their 'customary, ordinary, and accepted meaning,' unless there is an indication that the parties intended to use the words in a technical sense. 'A word's ordinary signification is tested by what meaning a reasonably prudent layperson would attach to the term.'

*Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 640, 679 A.2d 540 (1996) (citations omitted) (quoting *Sullins v. Allstate Ins. Co.*, 340 Md. 503, 508, 667 A.2d 617 (1995)).

The policy issued by appellant to JLH provided insurance for errors or omissions made by JLH in the scope of its business. In terms of coverage, the policy stated:

[W]e will pay for loss up to the Limits of Liability, in excess of the deductible, that the insured becomes legally obligated to pay as a result of a claim.... The loss must arise out of negligent acts, errors, or omissions in the conduct of the insured's business, wherever committed or alleged to have been committed, by the insured ... in the rendering or failure to render professional services as:

   a.  A General Insurance Agent;

   b.  An Insurance Broker;

   c.  An Insurance Agent;

   d.  An Insurance Consultant;

   e.  A Managing General Agent;

   f.  A Life Insurance Agent; or

   g.  A Surplus Lines Broker.

The contract expressly stated that appellant would provide a defense to any claim that fell under the policy. Specifically, the policy stated:

[W]e shall defend any claim first made during the policy period seeking damages to which this insurance applies even if the allegations of the claim are groundless, false, or fraudulent. We may make such investigation of any negligent act, error, or omission as we deem expedient....

The policy also provided a number of exclusions, including one stating that insurance would not be provided for a claim arising out of:

4.  Any liability for money received by an insured or credited to an insured for fees, premiums, taxes, commissions, loss payments, or escrow or brokerage monies.

This exclusion is known as the "money received exclusion."

In sum, the policy provided coverage for negligent acts, errors, or omissions for which the insured is legally liable in

the rendering or failure to render professional services, subject to certain exclusions. Appellee, therefore, must: (1) demonstrate that the CIGNA complaint alleges causes of action that fall under the coverage provided; and (2) that one of the express exclusions does not apply.

■ Under the second part of the *Pryseski* test, we must determine whether the lawsuit alleges action that is potentially covered under JLH's policy with appellant. *See Sullins,* 340 Md. at 509, 667 A.2d 617. Generally, we look to the allegations made in the complaint to determine whether claims may potentially be covered. Additionally, a court may look towards extrinsic evidence to determine whether a lawsuit alleges action that is potentially covered because "[a]llowing an insured the opportunity to establish a defense to tort allegations which may provide a potentiality of coverage under an insurance policy ... is precisely what the insured bargained for under the insurance contract." *Cochran,* 337 Md. at 110, 651 A.2d 859.

■ Furthermore, if any claims potentially come within the policy coverage, the insurer is obligated to defend all claims, " 'notwithstanding alternative allegations outside the policy's coverage, until such times ... that the claims have been limited to ones outside the policy coverage.' " *Southern Md. Agric. Assoc., Inc. v. Bituminous Cas. Corp.,* 539 F.Supp. 1295, 1299 (D.Md.1982) (quoting *Steyer v. Westvaco Corp.,* 450 F.Supp. 384, 389 (D.Md.1978)); *See* John Alan Appleman, *Insurance Law and Practice,* § 4684.01 (Rev. ed.1979) at 102–06 ("The fact that the pleadings state a cause of action that is not covered by the policy does not excuse insurer if another ground for recovery is stated that is covered.... Accordingly, the insurer is obligated to provide a defense against the allegations of covered as well as the noncovered claims."). Doubts as to whether an allegation indicates the possibility of coverage should be resolved in the insured's favor. *See United States Fidelity & Guar. Co. v. National Paving and Contracting Co.,* 228 Md. 40, 54, 178 A.2d 872 (1962).

i.

## The Money Received Exclusion

■ In determining whether a potentiality of coverage exists, we must compare the insurance policy to the allegations set forth in the underlying action. *See Brohawn*, 276 Md. at 407–08, 347 A.2d 842. The gravamen of the CIGNA complaint is that appellee and JLH failed to remit $326,480.12 in premiums collected on behalf of CIGNA. Appellant asserts that it has no obligation to cover any losses or defend appellee based on the "money received exclusion."

Appellant cites *K. Bell & Assoc., Inc. v. Lloyd's Underwriters*, 97 F.3d 632 (2 [d] Cir.1996), in support of its contention that there is no possibility of coverage based on the money received exclusion. In *Lloyd's Underwriters*, an insurance broker was found liable for failure to remit premiums collected on behalf of an insurance company in violation of applicable state law. The broker's professional liability insurer denied coverage based on an exclusion that stated that the insurer would not provide coverage for claims " 'arising out of the commingling of monies or accounts, or loss of monies received....' " *Id.* at 637. The Second Circuit, based on this exclusion, held that the insurer had no duty to provide coverage. *See id.* at 639.

■ Appellee attempts to distinguish *Lloyd's Underwriters* on the grounds that his liability has yet to be determined, and until he is determined liable, appellant has a duty to defend. We disagree. The exclusion applies to any *claim* of liability for money received. Nothing in the exclusion requires a judicial determination of liability.

Appellee relies on *Litz* for the proposition that the "possibility that the fact-finder may conclude that [appellee] was [not] involved in the receipt of premium monies creates a potentiality of coverage and entitles him to a defense." This reliance on *Litz* is misplaced. In *Litz*, Mr. and Mrs. Litz sought coverage under their homeowners' insurance policy for their liability for injuries suffered by a child in the care of Mrs. Litz. In his

answer, Mr. Litz raised the defense that he was not involved in his wife's child-care business. The insurance company denied coverage to both Mr. and Mrs. Litz under the "business pursuits" exception contained in the policy.

The Court of Appeals held that the potentiality of coverage did exist for Mr. Litz and that the circuit court erred in failing to treat Mr. and Mrs. Litz as having separate policies. *See id.* at 230–31, 695 A.2d 566. In doing so, the Court held that "the possibility that the fact finder may conclude that Mr. Litz was not involved in the babysitting creates a potentiality of coverage and entitles Mr. Litz to a defense in the underlying tort case." *Id.* at 231, 695 A.2d 566.

The instant case differs from *Litz.* In *Litz,* the potentiality for coverage existed because Mr. Litz claimed he was not involved in the activity that caused the exclusion to be applicable. Conversely, in the instant case, appellee does not deny being an employee of JLH or that his activities on behalf of JLH did not encompass collecting premiums on CIGNA's behalf. Rather, he is "vigorously contesting 'liability.'" His liability defense is not the key; what is key is the fact that even if appellee were found liable for failing to remit premiums collected on CIGNA's behalf, appellant would not have to pay the resulting damages because of the monies received exclusion. In the absence of any potential liability to pay the damages, appellant has no obligation to defend. To hold otherwise would render the exclusion meaningless in the sense that the insurer will always be required to defend whenever an insured denies liability for an activity for which there is no coverage provided.

If CIGNA's sole cause of action asserted in the complaint was based on appellee's failure to remit premiums collected, we would hold that appellant had no duty to defend under the monies received exclusion. Nevertheless, "[i]f there is a possibility, even a remote one, that the plaintiff's claims could be covered by the policy, there is a duty to defend." *Id.* In examining the remainder of the CIGNA complaint, we find that this possibility exists.

▇ Along with its claims for premiums due, CIGNA alleged in its complaint:

13. ... [JLH] also agreed to 'keep complete records and accounts of all transactions pertaining to insurance written under this [agency] Agreement' and that the CIGNA Companies would 'have the right to examine [JLH's] accounts and records and make copies of them.' The Agency Agreement provided for automatic termination in the event that [JLH] misappropriated any of the CIGNA Companies' 'funds or property' and that, in such event, 'all records relating to policies [JLH] produced will belong to [CIGNA].'

15. ... The CIGNA Companies had demanded that [appellee] return its books and records relating to insurance policies. [Appellee and NARM] have failed to return the polices....

\* \* \*

### Negligence

20. The conduct of [appellee] constitutes negligence. [Appellee] ... had a duty to monitor business operations to detect and prevent the diversion and misapplication of funds that occurred here.

The claims stated in paragraphs thirteen and twenty, appellee's failure to turn over records and failure to monitor business operations, fall outside the scope of the money received exclusion. The exclusion, by its own terms, is limited to monies received by an insured for "fees, premiums, taxes, commissions, loss payments, or escrow or brokerage monies." As the Second Circuit noted in *Lloyd's Underwriters*, "if [the trial court found that the broker] was liable for failing to produce its records, then the [trial court was correct in ruling that the exclusion] does not explicitly exclude claims arising from the failure to produce records." *Lloyd's Underwriters*, 97 F.3d at 637. The possibility of coverage exists for these claims. Therefore, because "some of the claims against [appellee] fall within the terms of coverage, and some without [appellant] must still defend the entire claim." *Warfield–*

*Dorsey Co., Inc. v. Travelers Casualty & Surety Company of Illinois*, 66 F.Supp.2d 681, 688 (D.Md.1999) (citing *Hartford Acc. and Indem. Co. v. Sherwood Brands, Inc.*, 111 Md.App. 94, 106, 680 A.2d 554 (1996) *vacated on other grounds*, 347 Md. 32, 698 A.2d 1078 (1997)).

▆▆ Appellant's duty to defend is predicated on the alternate claims which do not fall under the express provisions of the money received exclusion. If at some point during litigation these claims were dismissed, and all that remained were the claims based on the premiums received,[1] then appellant's duty to defend would be extinguished. Until that point, however, appellant must provide a defense to appellee. We hold, therefore, that the trial court did not err in granting appellee's and denying appellant's motions for summary judgment based on the money received exclusion.

## ii.

### Collection of Premiums as Professional Services

▆▆ Appellant next contends that CIGNA's claims are not covered by the policy because they do not arise out of "professional services." The policy provides coverage for "negligent acts, errors, or omissions the insured is legally liable in the rendering or failure to render professional services." According to appellant, "the acts, errors or omissions that [appellee] is alleged to have committed all stem from his contractual obligations to forward premiums paid by insureds to the insurance carriers which wrote insurance contracts for their clients." Consequently, appellant argues, these are accounting activities and not professional services. We disagree and explain.

The policy does not define professional services, and not every act performed by an insurance broker is a professional service. In determining what activities fall within the category of "professional services", we find guidance from a Ninth

---

1. These claims are the counts for 1) suit on account; 2) conversion; 3) breach of fiduciary duty; and 4) money had and received.

Circuit opinion summarizing what constitutes a "professional service":

> The act or service must be such as exacts the use or application of special learning or attainments of some kind. The term 'professional' in the context used in the policy provision means something more than mere proficiency in the performance of a task and implies intellectual skill as contrasted with that used in an occupation for production or sale of commodities. . . . In determining whether a particular act is of a professional nature or a 'professional service' we must look not to the title or character of the party performing the act, but to the act itself.

*Bank of California, N.A. v. Opie,* 663 F.2d 977, 981 (9th Cir.1981) (quoting *Marx v. Hartford Accident and Indem. Co.,* 183 Neb. 12, 157 N.W.2d 870, 871–72 (1968)).

Appellee cites *Opie* to support his claim that the collection of premiums is a professional service covered by appellant's policy. In *Opie,* a bank provided lines of credit for Opie to draw upon to finance construction projects. Pursuant to the loan agreement, Opie was required to use the loan proceeds to discharge construction liens and other encumbrances on properties. In violation of the agreement, Opie used the funds for another purpose and failed to discharge the construction liens. This resulted in the bank's security being impaired. Eventually, the bank obtained a judgment against Opie and filed a writ of garnishment against Opie's professional liability insurer. The insurer claimed that the actions of Opie were not "professional services."

The Ninth Circuit held that Opie's activities were professional services. In doing so, the court recognized that managing the loan proceeds was part of Opie's day-to-day operations and a necessary part of its business. *See id.* at 982. Further, the court reasoned that "[t]o conclude otherwise would ignore the nature of the [business], the plain meaning of the policy, and the reasonable expectations of the insured." *Id.*

The broad scope of business activities potentially covered by a liability policy for "professional activity" was also demon-

strated in *Biborosch v. Transamerica Ins. Co.,* 412 Pa.Super. 505, 603 A.2d 1050, 1053, *appeal denied,* 532 Pa. 653, 615 A.2d 1310 (1992), where the Superior Court of Pennsylvania held that the insurer had a duty to defend against a suit for wrongful termination brought by an employee of a general insurance agent. The Pennsylvania court reasoned:

> [The insured's] termination of [the employee] was clearly an act by [the insured] committed in the course of rendering professional services as general manager of the agency. Moreover, since professional services are defined as any acts necessary or incidental to the conduct of [the insured's] insurance business, including, inter alia, administration in connection therewith, it can readily be seen that [the insured's] action in terminating [the employee] falls within this definition as well.

*Id.* The Pennsylvania court emphasized that it reached the conclusion that the alleged wrongful actions potentially fell within the scope of the subject policy because "the Transamerican policy specifically insures [the insured] not only as an insurance broker, but also as a general agent or manager." *Id.*

Like the insured in *Biborosch,* appellee was a general agent for CIGNA. Accounting for premiums is generally a duty that an insurance agent owes to an insurance company, and is part of the agent's business. The insurance company may choose the agent, in part, because of his ability to maintain accurate records of the premiums for policies sold on behalf of the company. The agreement between CIGNA and JLH imposes the obligations to account and maintain accurate records upon JLH with the following provisions:

> In accordance with our procedures, you will collect, account for and pay premiums on business you write. You will be responsible for collecting all premiums on business which you solicit and which is accepted by us. You must pay us the premium even if you do not collect it from the policyholder.

\* \* \*

You must keep complete records and accounts of all transactions pertaining to insurance written under this Agreement. Such records and accounts must be kept current and readily identifiable.

Further, implicit in appellee's duties to maintain complete records and account for premiums is appellee's duty to monitor business operations. Indeed, appellee would not be able to maintain adequate records and keep track of premium payments if he did not monitor his business. For example, appellee would not be able to track the policies written, whether premiums for these policies have been paid, any claims on the policies, and other "transactions pertaining to insurance written under the Agreement."

Given the relationship between CIGNA and appellee, we conclude that the complaint's allegation that appellee failed to monitor business operations, maintain records, and account for premiums addresses alleged failures in performing professional services.

Thus, we hold that the lower court properly denied appellant's summary judgment motion on the grounds that the alleged wrongs committed by appellee were not professional services.

### c.

### Discovery Claims

Appellant contends that even if the circuit court did not err in holding that it had a duty to defend appellee under the express terms of the policy, the circuit court's decision should be reversed on procedural grounds. Appellant argues that it "should have been permitted to conduct discovery before the [c]ircuit [c]ourt ruled on [appellee's] motion for summary judgment." According to appellant, discovery may have allowed it to raise issues of material fact that would defeat appellee's motion.

A general allegation that there is a dispute of material fact is insufficient to defeat a motion for summary judgment. *See Lowman v. Consolidated Rail Corp.,* 68 Md. App. 64, 70, 509 A.2d 1239, *cert. denied,* 307 Md. 406, 514 A.2d 24 (1986) (quoting *Brown v. Suburban Cadillac, Inc.,* 260 Md. 251, 257, 272 A.2d 42 (1971)). Moreover, the mere submission of an affidavit, or other evidence in opposition to a motion for summary judgment, does not ensure that a triable issue of fact will be generated. *See Bennett v. Baskin & Sears,* 77 Md. App. 56, 71, 549 A.2d 393 (1988). Even when there are factual disputes, when "resolution of these disputes makes no difference in the determination of the legal question ... [the disputed facts] do not prevent the grant of summary judgment." *Seaboard Sur. Co. v. Richard F. Kline, Inc.,* 91 Md.App. 236, 247, 603 A.2d 1357 (1992).

Rule 2–501(d) addresses the use of affidavits in contesting a summary judgment motion. It provides:

If the court is satisfied from the affidavit of a party opposing a motion for summary judgment that the facts essential to justify the opposition cannot be set forth for reasons stated in the affidavit, the court may deny the motion or may order a continuance to permit affidavits to be obtained or discovery to be conducted or may enter any other order as justice requires.

In *A.J. Decoster Co. v. Westinghouse Elec. Corp.,* 333 Md. 245, 634 A.2d 1330 (1994), the Court of Appeals addressed the requirements to justify additional discovery before a grant of summary judgment. In *Decoster,* the trial court granted a defendant's summary judgment motion on limitations grounds. The plaintiff argued that the trial court erred because if it was allowed to complete discovery, it may have been able to allege the existence of material facts that would have extended the limitations period. Conversely, the defendant argued that its affidavit supported the grant of summary judgment and mere speculation was not enough to generate an issue of material fact. *See id.* at 261, 634 A.2d 1330.

The Court of Appeals held that the trial court did not err in granting the motion for summary judgment. Writing for the Court, Chief Judge Murphy explained that "[w]hile ... [a trial] court has discretion to deny a motion for summary judgment so that a more complete factual record can be developed, it is not reversible error if the court chooses not to do so." *Id.* at 262–63, 634 A.2d 1330. Because the plaintiff below "failed to set forth facts controverting those proffered" by the defendant, the Court held that the trial court did not err in granting summary judgment. *Id.* at 263, 634 A.2d 1330.

■■■ Appellant argues that the affidavit of its attorney is sufficient to raise questions of material fact. Specifically, appellant contends that discovery was necessary to determine whether: 1) appellee is an insured under the contract between appellant and JLH; 2) appellee complied with conditions to coverage provided under the insurance contract; and 3) there is other insurance which provides a defense or indemnification to appellee for the claims at issue. We shall address each of these contentions in turn.

### i.

### Appellee as an insured

Appellant claims that appellee has not demonstrated that he is an insured under the contract. Additionally, appellant contends that there is no coverage because some of the activities contained in the CIGNA complaint occurred after appellee left JLH and established NARM.

The evidence in this case clearly establishes that appellee is an insured under the insurance contract. Through its answer to the third-party complaint and its memorandum of law in support of its motion for summary judgment, appellant admitted that it had entered into an error and omissions policy with JLH and that NARM entered into an agreement with appellant for an optional extended reporting period. Moreover, when ruling on the cross-motions for summary judgment, Judge Levitz had before him the CIGNA complaint, the insurance contract, and the optional extended reporting en-

dorsement. The insurance policy clearly and unambiguously provides coverage for "any partner, executive officer, director, or employee of [JLH], while acting within the scope of his or her duties on behalf of [JLH]." Appellee is listed as a "licensed owner, partner, officer, [or] director" in the policy. Additionally, the allegations in the CIGNA complaint raise alleged causes of action that occurred during the policy period. Appellant does not claim that the insurance policy was procured by fraud or otherwise contest its validity.

Based on the undisputed evidence presented, Judge Levitz properly concluded that appellee was covered by the insurance contract. The affidavit by appellant's attorney asserting that appellant may find facts in discovery that will support its contention that appellee is not covered is insufficient to prevent the grant of summary judgment.

### ii.

### Notice Requirements

Appellant also contends that it was entitled to discovery regarding whether appellant complied with certain conditions of the insurance contract. The insurance contract requires that the insured:

Notify us in writing as soon as practicable:

(1) Of any claim, including the receipt of notice from any person of an intention to hold the insured responsible for any loss falling within the terms of this insurance; or

(2) Of any fact or circumstance which may give rise to a claim.

Moreover, the insurance contract requires an insured to forward to appellant "any demand, notice, summons, or other process or correspondence received by an insured if a claim is made or suit is brought against an insured."

Under Maryland law, a delay in notifying an insurance company may excuse the duty to defend if the insurer can demonstrate prejudice in the delay. *See Sherwood Brands, Inc. v. Hartford Accident and Idem. Co.,* 347 Md. 32,

40, 698 A.2d 1078 (1997). The undisputed facts of this case indicate that the CIGNA complaint was filed on July 23, 1997, and that appellee notified appellant of the claim in writing on August 6, 1997. Appellant does not articulate how or why this short delay led to its prejudice; it only asserts that it may have been prejudiced and should be allowed to conduct discovery. Mere speculation and hypothesis such as this is not sufficient to generate a genuine issue of material fact.

We hold that Judge Levitz did not abuse his discretion when he granted appellee's summary judgment motion before allowing appellant to conduct additional discovery.

### iii.

### Existence of other insurance

█ Appellant's final contention is that the trial court should have allowed it to discover whether appellee had other insurance which provided coverage in the CIGNA action. The insurance contract provided that

> this insurance is excess over any other applicable insurance whether such insurance is primary, excess, contributory, contingent, or otherwise and whether such insurance is collectible or not; unless such other insurance is written to be specifically excess over the insurance provided by this policy.

According to appellant, if appellee is covered under another insurance contract, it "has no duty to defend whatsoever because its coverage would be excess to that provided by any other insurance contract."

█ Whether appellee has other insurance coverage may be in dispute. Nevertheless, resolution of this dispute has no bearing on the outcome of the summary judgment motion. The duty to defend is broader than the duty to indemnify. *See Luppino v. Vigilant Ins. Co.*, 110 Md.App. 372, 381, 677 A.2d 617 (1996), *aff'd*, 352 Md. 481, 723 A.2d 14 (1999). "Excess" or "other" insurance clauses have been recognized as not applying to the duty to defend because " 'unless stated otherwise, that obligation is independent of liability and any

limitations thereon.' " *Covington Township v. Pacific Employers Ins. Co.,* 639 F.Supp. 793, 801 (M.D.Pa.1986) (quoting *Pacific Idem. Co. v. Linn,* 590 F.Supp. 643, 651 n. 10 (E.D.Pa. 1984), *aff'd,* 766 F.2d 754 (3rd Cir.1985)). We agree with appellant that an excess carrier does not have the obligation to provide a defense, provided a primary carrier has been identified. *See Appleman* § 4682. We do not agree, however, that appellant was entitled to discovery in order to ascertain whether there was a primary carrier. It is not unusual for insurance policies to contain language making the policy excess over any other available policy that is primary. The policy in question includes such language, but it does not state that the insured *must* maintain some minimum amount of primary coverage for the excess policy to apply.

Under such circumstances, where the subject policy is not expressly conditioned on the maintenance of primary coverage, we will not assume the existence of a primary carrier. In the absence of any evidence that a primary carrier exists, appellant must assume the defense on the assumption that there exists no primary coverage. If and when a primary carrier is identified, appellant will have a claim against the primary carrier for the costs of defense. *See Employers' Liability Assur. Corp. v. Indemnity Ins. Co. of North America,* 228 F.Supp. 896 (D.C.Md. 1964) (excess insurer may recover costs of defense where primary insurer refused to furnish a defense); Appleman § 4682 (most courts will allow excess carrier to recover costs of defense from primary carrier who refused defense).

Judge Levitz did not err in granting appellee's summary judgment motion before allowing appellant to conduct discovery pertaining to other insurance.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**