**HARTFORD CASUALTY INSURANCE COMPANY**

v.

**CHASE TITLE, INC.**

**No. CIV. JFM–02–3017.**

United States District Court,
D. Maryland.

Feb. 25, 2003.

James T. Wharton, David L. Rutland, Robert S. Morter, Wharton Levin Ehrmantraut and Klein, Annapolis, MD, for Plaintiff.

David R. Breschi, Martin B. Ellis, Shumaker Williams PC, Towson, MD, for Defendant.

## MEMORANDUM

MOTZ, District Judge.

Hartford Casualty Insurance Company ("Hartford") brings suit against Chase Ti-

tle, Inc. ("Chase"). Hartford seeks a declaratory judgment stating that an insurance policy it issued to Chase does not cover allegations against Chase in a class action suit filed in the Superior Court for the District of Columbia. Both parties have moved for summary judgment. For the reasons detailed below, I will grant Chase's motion for summary judgment.[1]

## I.

In August 2001, Hartford issued an errors and omissions liability insurance contract (the "policy") to Chase. The policy was effective from August 1, 2001 to August 1, 2002, retroactive to August 17, 1998. Under the policy, Hartford promised to indemnify and defend Chase for certain "wrongful acts."

In May 2002, the plaintiffs in a separate class action suit against Chase and other defendants filed an amended complaint. The class action arises out of alleged deceptive settlement practices on home mortgage loans. The class action complaint has five counts, which allege violations of the District of Columbia Consumer Protection Procedures Act ("CPPA") and Real Estate Settlement Procedures Act ("RESPA"), as well as common law claims for conversion, breach of fiduciary duty, and negligence.

In September 2002, Hartford filed this suit.

## II.

■ In Maryland, an insurer must defend an insured if the insurance policy potentially covers the underlying claim. *Litz v. State Farm Fire & Cas. Co.*, 346 Md. 217, 225, 695 A.2d 566, 570 (1997). To determine whether there is a potential that a claim could be covered, a court must: (1)

determine the coverage and defenses "under the terms and requirements of the insurance policy," and (2) examine the allegations of the tort suit to determine whether the allegations "bring the tort claim within the policy's coverage." *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, 193, 438 A.2d 282, 285 (1981). Any doubt about the potentiality of coverage is resolved in favor of the insured. *Chantel Assocs. v. Mount Vernon Fire Ins. Co.*, 338 Md. 131, 145, 656 A.2d 779, 786 (1995).

### A.

Maryland has well-established rules for interpreting insurance contracts:

> [I]nsurance policies, like other contracts, are construed as a whole to determine the parties' intentions. Words are given their customary, ordinary, and accepted meaning, unless there is an indication that the parties intended to use the words in a technical sense. A word's ordinary signification is tested by what meaning a reasonably prudent layperson would attach to the term.

*Sullins v. Allstate Ins. Co.*, 340 Md. 503, 508, 667 A.2d 617, 619 (1995) (internal quotation marks and citations omitted).

The policy's explanation of coverage states:

> 1. [Hartford] will pay on behalf of [Chase] all sums which [Chase] shall become legally obligated to pay as "damages" and "claim expenses" because of a "wrongful act" to which this policy applies.
>
> 2. [Hartford] will have the right and duty to defend any "claim" or "suit" seeking "damages" in 1. above.

---

**1.** I am deciding only that Hartford has a duty to defend. It would be premature to determine whether it has a duty to indemnify until after the issues in the underlying class action have been resolved. *See, e.g., Mut. Benefit Group v. Wise M. Bolt Co.,* 227 F.Supp.2d 469, 478–79 (D.Md.2002).

(Policy, Pl.'s Ex. D, at 1.) The policy defines "damages" as follows:

> 9. "Damages" means compensatory "damages" which an insured becomes legally obligated to pay. "Damages" does not include:
>
> > (a) Punitive or exemplary damages, fines, sanctions or penalties against any insured, or the return or reimbursement of fees for "covered services;"
> >
> > (b) *Disputes over fees, commissions, deposits, premiums or charges made for services rendered or which should have been rendered;*
> >
> > (c) Injunctive relief, declaratory relief or any recovery or relief other than monetary amounts; or
> >
> > (d) The costs of correcting, replacing or reproducing material or data which has been lost, stolen or damaged.

(*Id.* at 8 (emphasis added).) "Wrongful acts" mean:

> any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by any insured or by any person for whose conduct the insured is legally responsible in rendering or failure to render "covered services." "Wrongful act" includes related "wrongful acts" which have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or cause as the same "wrongful act" for the purposes of this insurance.

(*Id.* at 9.)

The above policy provisions establish a clear coverage scheme. Hartford has a duty to defend Chase for all suits involving the specified "wrongful acts." However, Hartford is not obligated to defend Chase in suits involving "[d]isputes over fees ... for services rendered or which should have been rendered."

**B.**

■ The principal issue in this coverage dispute is whether the class action is a dispute over fees.[2] If the class action is exclusively a dispute over fees, Hartford has no duty to defend Chase because the policy expressly excludes fee disputes from coverage. If the class action potentially involves more than a dispute over fees, however, Hartford has a duty to defend Chase. I find that the class action potentially involves more than a dispute over fees.

In *Utica Mut. Ins. Co. v. Miller,* 130 Md.App. 373, 746 A.2d 935 (2000), an insurance agent brought a declaratory judgment action against his errors and omissions insurer seeking coverage under his policy. *Id.* at 377, 746 A.2d at 937. The policy excluded from coverage "[a]ny liability for money received by an insured or credited to an insured for fees, premiums, taxes, commissions, loss payments, or escrow or brokerage monies." *Id.* at 382, 746 A.2d at 940. The underlying complaint alleged: (1) the insurance agent failed to properly remit premiums collected for one of his clients, (2) conversion, (3) breach of fiduciary duty, (4) unjust enrichment, and (5) negligence. *Id.* at 379, 746 A.2d at 938.

The Court of Special Appeals held that the insurer had a duty to defend. The court stated that if the action were based entirely on the insured's failure to remit the premiums he collected, there would be no duty to defend because of the exclusion quoted above. *Id.* at 385, 746 A.2d at 942.

---

**2.** Hartford does not contend that the allegations in the class action do not meet the definition of "wrongful acts."

Moreover, the court found that the "primary thrust" of the underlying complaint was the insured's mishandling of the premiums. *Id.* at 379, 746 A.2d at 938. The court found, however, that the negligence claim concerned more than the failure to remit premiums. The negligence claim was also based on the insured's failure to monitor business operations and turn over specified records. *Id.* at 386, 746 A.2d at 942.

Like the underlying complaint in *Miller*, the "primary thrust" of the class action complaint is something excluded from coverage—a dispute over fees. The general allegations of the class action complaint, the specific allegations against Chase, and Counts II, III, and IV concern only fees the class action defendants charged their customers for services. (*See* Class Action Compl., Compl. Ex. B, ¶¶ 3, 11–12, 14, 29, 47–54, 55–57, 58–61.) Also like the underlying complaint in *Miller*, however, specific counts suggest that the class action involves more than a dispute over fees.

Count I alleges that the defendants violated the CPPA. While most of the alleged violations of the CPPA involve fees, four of the alleged violations potentially involve other matters.[3] Specifically, the complaint alleges that the defendants violated the CPPA by: (1) misrepresenting that the HUD–1 settlement statements were accurate; (2) misrepresenting that disbursements would be made according to the HUD–1 settlement statements; (3) offering services they had no intention of providing; and (4) violating other statutes designed to protect real estate borrowers. (*Id.* ¶ 44.) Each of these allegations potentially involve more than a dispute over fees. Resolving all doubt in favor of Chase, *Chantel Assocs.*, 338 Md. at 145, 656 A.2d at 786, I find that the policy covers the allegations in Count I.

Count V alleges that the defendants were negligent by breaching their duties to: (1) provide the plaintiffs with HUD–1 settlement statements that accurately detail the charges assessed against the borrowers, the actual services performed, and the identities of all payees; (2) comply with RESPA; and (3) make settlement disbursements as reflected in the HUD–1 settlement statement. (Class Action Compl., Compl. Ex. B, ¶¶ 62–64.) These allegations also may involve more than fee disputes. As a result, I find that the policy covers the allegations in Count V.

Because two of the class action counts are potentially covered by the policy, Hartford has a duty to defend Chase on the entire class action claim. *See, e.g., Warfield–Dorsey Co. v. Travelers Cas. & Sur.*

3. In its entirety, the complaint states that the defendants violated the CPPA in the following ways:
A. They misrepresented that the HUD–1 settlement statement was accurate;
B. They misrepresented that disbursements would be made according to the HUD–1;
C. They misrepresented that all the fees they were charging were for work actually performed;
D. They misrepresented to the homeowners that the homeowners had to pay government fees, including but not limited to a fee for a "walk-through affidavit," where no such fee exists or was paid to the government;
E. They misrepresented that fees were being paid to a third party such as a title abstractor when in fact a portion of the fee was kept as an undisclosed additional fee to the defendants;
F. They disguised fees so that the homeowners would be unaware of the full amount of the fee being charged for the agents' services;
G. They offered real estate settlement services to borrowers without the intent to provide them as offered;
H. They violated other statutes designed to protect the interests of borrowers, such as the Real Estate Settlement Procedures Act. (Class Action Compl., Compl. Ex. B, ¶ 44.)

*Co. of Illinois,* 66 F.Supp.2d 681, 688 (D.Md.1999) ("If some of the claims against an insured fall within the terms of coverage, and some without, the insurer must still defend the entire claim.").

A separate order granting defendant's motion is being entered herewith.

## ORDER

For the reasons stated in the accompanying memorandum, it is, this 25th day of February 2003,

ORDERED that

1. Hartford Casualty Insurance Company's motion for summary judgment is denied;

2. Chase Title, Inc.'s motion for summary judgment is granted;

3. It is declared that Hartford Casualty Insurance Company has a duty to defend Chase Title, Inc. in *LaPoint v. Mid–Atlantic Settlement Services, Inc.,* Civ. No. 02CA002691 in the Superior Court for the District of Columbia; and

4. This case is closed.