**LAZZARA OIL COMPANY, et al., Plaintiffs,**

v.

**COLUMBIA CASUALTY COMPANY, et al., Defendants.**

**LAZZARA OIL COMPANY, et al., Plaintiffs,**

v.

**FEDERATED MUTUAL INSURANCE CO., Defendant.**

Nos. 87–708 Civ–T–10(A), 87–1015 Civ–T–10(B).

United States District Court, M.D. Florida, Tampa Division.

April 15, 1988.

Charles Wachter, Tampa, Fla., for plaintiffs.

Stephen Sears, Tampa, Fla., for Columbia.

Robert Bugg, Clearwater, Fla., for Constitution.

Donald Stanley, Tampa, Fla., for Northbrook.

Brooks Hoyt and Laura Whiteside, Tampa, Fla., for Pacific.

H. Vance Smith, Tampa, Fla., for Reliance.

Louis Schulman, Tampa, Fla., for Federated.

## ORDER

HODGES, Chief Judge.

This is a diversity action in which the Plaintiffs have filed an amended complaint seeking a declaratory judgment (Counts I and II), and damages for breach of contract (Count III). Plaintiffs allege that certain of their liability insurers, Defendants Columbia Casualty Company ("Columbia"), Constitution State Insurance Company ("Constitution"), Federated Mutual Insurance Company ("Federated"), Northbrook Property and Casualty Insurance Company ("Northbrook"), Pacific Insurance Company ("Pacific") and Reliance Insurance Company ("Reliance") (collectively "Defendants"), have failed to defend and indemnify them in connection with another legal proceeding filed against them, *Michael J. Barras, d/b/a Mike's Indian Rocks Amoco, et al v. Lazzara Oil Co. et al* ("*Barras* suit"), as the Defendants were contractually obligated to do.

Before the Court are motions for summary judgment filed by the Plaintiffs and each Defendant. Since the Defendants' motions raise similar arguments, they will be treated collectively unless otherwise specifically noted.

The insurance contracts between each Defendant and the Plaintiffs are substantially similar with respect to the type of claims covered. The contracts provide that the Defendants will provide coverage for, i.e., defend and indemnify [1], Plaintiffs in the event of personal or advertising injury or property damage which arises out of an "occurrence." "Personal injury" is defined to include liability arising out of a wrongful eviction or entry or similar invasion of the right of private occupancy. "Advertising injury" is defined as an injury arising out of a tort committed in the course of the Plaintiff's advertising activities, if such injury arises out of, *inter alia,* defamation, violation of right of privacy or unfair competition. "Property damage" means physical injury to or destruction of tangible property including the loss of use thereof, or loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period. Finally, "occurrence" is defined as an accident which results in bodily injury or property damage neither expected nor intended from the standpoint of the Plaintiffs.

Plaintiffs assert that, as a matter of law, the above noted contractual provisions establish that Defendants were, and are, obligated to defend them in the *Barras* suit. Conversely, Defendants contend that those same contractual provisions show, as a matter of law, that they have contracted for no such obligation.

---

1. Defendant Pacific's contract does not specifically include a provision for defending Plaintiffs. It does, however provide for indemnification.

The plaintiffs in *Barras* are operators of Amoco service stations. The *Barras* plaintiffs allege that Plaintiffs (jobbers of Amoco products) have illegally sought to fix the retail prices at which the *Barras* plaintiffs may sell gasoline to the public through self-service pumps. This price fixing, the *Barras* plaintiffs allege, has been enforced through financial penalties, regular visitation of the *Barras* plaintiffs' service stations and threats of lease termination. Additionally, the *Barras* plaintiffs allege that the Plaintiffs impermissibly required them to purchase their requirements of non-petroleum products such as tires and batteries from Plaintiffs even though those items were available from other sellers at lower prices. As a result of these activities, the *Barras* plaintiffs allege that Plaintiffs are guilty of vertical price fixing in violation of the Sherman Act, 15 USC § 1, violating Florida's antitrust laws, Ch. 542, Fla.Stat., and unfair trade practices in violation of Florida law, § 501.201 et seq, Fla.Stat.

The Defendants' duty to defend the *Barras* suit rests entirely upon the meaning of the provisions of the insurance policies and their legal effect. Since the construction and effect of a written contract are matters of law to be determined by the Court, this matter, given the completeness of the record, is appropriate for summary judgment.

Since the jurisdiction of this Court is based on diversity of citizenship, and since the insurance contracts were issued in Florida, the Court must look to Florida law for guidance in interpreting the policies. *Pepper's Steel & Alloys, Inc. v. United States Fidelity and Guaranty Co.*, 668 F.Supp. 1541, 1544 (S.D.Fla.1987). Under Florida law:

> The duty to defend "depends solely on the allegations in the complaint filed against the insured." *Tropical Park, Inc. v. United States Fidelity and Guaranty Co.*, 357 So.2d 253, 256 (Fla. 3d DCA 1978). The complaint must allege facts which fairly bring the case within coverage even though ultimately there may be no liability on the part of the insured. If the complaint alleges facts partially within and partially out-
> side the scope of coverage, the insurer is obligated to defend the entire suit. The duty to defend is separate and apart from the duty to indemnify and the insurer may be required to defend a suit even if the later true facts show there is no coverage.

*Trizec Properties, Inc. v. Biltmore Construction Co.*, 767 F.2d 810, 811–12 (11th Cir.1985) (citations omitted).

Plaintiffs contend that the personal and advertising injury and property damage portions of their coverage are implicated by the *Barras* suit. With regard to the personal injury alleged, Plaintiffs maintain that since they and the *Barras* plaintiffs had a landlord/tenant relationship, the *Barras* complaint alleges conduct tantamount to a constructive eviction or other invasion of the right of private occupancy and quiet enjoyment. Plaintiffs also contend that the alleged threats of lease termination made in the *Barras* complaint are sufficient to bring the *Barras* claims under the personal injury language of their insurance contracts. Additionally, the Plaintiffs assert that the allegation that they compelled the *Barras* plaintiffs to post certain prices should be considered advertising which constitutes unfair competition and therefore it is an "advertising injury" which is covered by their policies.

Plaintiffs also maintain that the *Barras* complaint alleges facts which show that the *Barras* plaintiffs are claiming that their property has been damaged. Plaintiffs note that in paragraph 44 of their amended complaint the *Barras* plaintiffs allege that the Plaintiffs' price fixing has "directly and severely injured plaintiffs' businesses and property." Additionally, Plaintiffs argue that the alleged facts indicate that there has been a loss of use of tangible property such as tires and batteries and a diminution in their value by virtue of the fact that many of the *Barras* plaintiffs have been driven out of business by Plaintiffs' actions. Plaintiffs argue that these allegations bring the *Barras* suit within the property damage definitions of their policies.

The Court cannot agree with Plaintiffs' interpretation of the *Barras* complaint. The *Barras* complaint alleges claims for violations of state and federal antitrust laws and simply seeks recovery for the economic losses incurred as a result of Plaintiffs' alleged price fixing. That the *Barras* plaintiffs are seeking solely to recover for pure economic losses, and not for personal or advertising injury or property damage (as those terms are defined in the insurance contracts), can be seen from a careful reading of their amended complaint which does not allege a claim for wrongful eviction or destruction of, or loss of use of, any tangible property.[2] This conclusion is bolstered by the answers given to interrogatories by the *Barras* plaintiffs. The answers state:

Plaintiffs' claims for damages include the following:

a. Lost profits on sales of gasoline;

b. Lost profits on lost sales of gasoline;

c. Lost profits on sales and lost sales of tires, batteries and accessories;

d. Loss of goodwill of their businesses for those plaintiffs who are no longer in business; and

e. Lost profits on lost repair work and other "bay" work for customers who come into the station to purchase gasoline and [tires, batteries and accessories].

Because the alleged damages can be characterized only as lost profits, there is no "property damage" or "personal injury" such as to bring the *Barras* claims within the scope of the insurance contracts. The mere fact that the *Barras* plaintiffs were the tenants of Plaintiffs and some of them went out of business is insufficient to fairly bring the *Barras* suit within the contractual definition of "personal injury." Similarly, the alleged *threats* of lease termination are not a "wrongful entry or eviction" because there is no allegation that any such action ever actually took place. *See Pleasure Driveway and Park District of Peoria v. Aetna Casualty and Surety Co.,* 80 Ill.App.3d 1093, 36 Ill.Dec. 231, 400 N.E.2d 651 (1980) (alleged wrongful termination of the operation of golf pro shops under claims of price fixing and monopolization insufficient to trigger the duty to defend under coverage against injury from wrongful entry or eviction).

Plaintiffs' contention that an "advertising injury" was alleged by the *Barras* plaintiffs is likewise without merit. The insurance contracts at issue provide for coverage in the event that *Plaintiffs'* advertising causes some type of injury such as defamation. There is absolutely no allegation in the *Barras* complaint that such an injury ever resulted from any advertising done by Plaintiffs. Advertising done by the *Barras* plaintiffs, whether voluntary or impermissibly compelled, is of no consequence with regard to the insurance policies at issue here.

Nor is Plaintiffs' contention that the *Barras* complaint alleges "property damage" correct. A thorough review of the *Barras* complaint reveals no claim which could reasonably be construed as seeking recovery for property damage as defined in the policies. All the damages claimed by the *Barras* plaintiffs have to do with their loss of profits which they attribute to the Plaintiffs' alleged price fixing. The fact that part of the claimed lost profits represent losses on the sale of tangible property (tires, batteries, etc.) does not alter the fact that the *Barras* plaintiffs strictly seek damages for their economic losses. *See L. Ray Packing Co. v. Commercial Union Insurance Co.,* 469 A.2d 832 (Me.1983) (argument that inability to sell herring in a free market constituted loss of use of the herring and thus was "property damage" rejected; allegations amounted to loss of profits only). Such pure economic losses

---

2. The *Barras* plaintiffs' allegation in paragraph 44 of their amended complaint that the alleged price fixing "injured plaintiffs business and property" simply tracks the language of the Clayton Act which provides a private cause of action to any person who is "injured in his business or property by reason of anything forbidden in the anti-trust laws." 15 USC § 15. Since there is no other allegation of property damage in the *Barras* complaint, the allegation in paragraph 44 is insufficient to show a loss of use of tangible property as is required to bring the claims within the scope of the insurance policies.

do not constitute damage or injury to tangible property. *Lassen Canyon Nursery v. Royal Insurance Company of America,* 720 F.2d 1016, 1018 (9th Cir.1983).

Since the Court has concluded that the *Barras* complaint has alleged neither "personal injury," "advertising injury" nor "property damage," the Court must agree with Defendants that the insurance policies did not obligate them to defend Plaintiffs in the *Barras* suit. In reaching the same conclusion in a similar case, a Florida court made the following statement which applies with equal force here:

"The premiums paid to insurance companies are computed on the basis of the probabilities of occurrences coming to pass that are within the insurance coverage. Since the contracts are the drafting product of the companies, their provisions are, quite rightly, construed most strongly against the company in questionable cases. (citation omitted). *This principle cannot be carried to the point of extending the coverage to make the policy something different than contemplated, however.* (citation omitted). Where the interpretation urged is not only strained, but would encompass a risk not contemplated by the kind of policy issued nor intended to be undertaken by the company, the insurer is entitled to that fair construction which reflects the understanding of the parties ..."

*Old Republic Insurance Co. v. West Flagler Associates, Ltd.,* 419 So.2d 1174, 1177 (Fla. 3d DCA 1982) *quoting Temco Metal Products Co. v. St. Paul Fire & Marine Insurance Co.,* 543 P.2d 1, 2 (Or.1975) (en banc) (citation omitted) (emphasis in original). As in *Old Republic,* the risk of defending and indemnifying Plaintiffs for the type of damages that they are alleged to have caused here simply was not contracted for by the parties.

Plaintiffs also assert that summary judgment in their favor is appropriate against Defendants Federated, Pacific, Reliance and Constitution because those Defendants have failed to comply with the notice provisions contained in Fla.Stat. § 627.426 and,

therefore, cannot deny coverage.[3] Section 627.426(2) provides in pertinent part:

(2) A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless:

(a) Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by had delivery; and

(b) Within 60 days of compliance with paragraph (a) or receipt of a summons and complaint naming the insured as a defendant, whichever is later, but in no case later than 30 days before trial, the insurer:

1. Gives written notice to the named insured by registered or certified mail of its refusal to defend the insured;

2. Obtains from the insured a nonwaiver agreement following full disclosure of the specific facts and policy provisions upon which the coverage defense is asserted and the duties, obligations, and liabilities of the insurer during and following the pendency of the subject litigation; or

3. Retains independent counsel which is mutually agreeable to the parties. Reasonable fees for the counsel may be agreed upon between the parties or, if no agreement is reached, shall be set by the court.

Defendants first assert that § 627.246 does not apply to them because they are not asserting a technical policy exclusion to coverage (to which the statute would presumably apply) but are instead asserting that they never insured Plaintiffs for *Barras*-type claims in the first place. In support of their argument, Defendants rely on the case of *United States Fidelity & Guaranty Co. v. American Fire & Indemnity Co.,* 511 So.2d 624 (Fla. 5th DCA 1987) ("*USF & G*"), which held that "[t]he legislature did not intend, by section 627.-426(2), to create coverage under a liability insurance policy that never provided that

---

**3.** Plaintiffs have not raised this argument with respect to Defendant Northbrook and have withdrawn this argument with respect to Defendant Columbia.

coverage, or to resurrect a policy that has expired by its own terms and no longer legally exists, to cover an accident or event occurring after its termination." *Id.* at 625.

The Court cannot agree with Defendants' assertion. This case is distinguishable from *USF & G* because in that case there was no insurance policy contract between the parties. The *USF & G* court held, essentially, that there was no "coverage defense" issue where there was no insurance relationship at all between the parties. *AIU Insurance Co. v. Block Marina Investment, Inc.,* 512 So.2d 1118, 1119 (Fla. 3d DCA 1987). Here, however, there are contracts of insurance in effect between the parties and there is a dispute as to whether the policies provided coverage for the *Barras* claims. In this circumstance the Court cannot agree with Defendants that they have not raised a "coverage defense" by failing to provide a defense for the claims asserted against Plaintiffs. *See Id.*

■ However, Defendants Pacific and Constitution raise another argument in support of their position. They argue that § 627.426 does not apply to them because they are excess insurers with no duty to defend.[4] This argument is well taken. Section 627.426 addresses "problems arising from disputes regarding whether, how and under what circumstances and conditions a defense will be provided for an insured pursuant to a defense provision of an insurance contract." *Pepper's Steel & Alloys v. United States Fidelity and Guaranty Co.,* 668 F.Supp. 1541, 1544 (S.D.Fla.1987). Since neither Pacific nor Constitution have a duty to defend Plaintiffs, § 627.426 is inapplicable to them. *Id.* Accordingly, Plaintiffs cannot hold either Pacific or Constitution responsible for defense of the *Barras* suit on the grounds of their failure to comply with § 627.426.

Since Defendants Federated and Reliance are not simply excess insurers,

§ 627.426 does apply to them. The Court, therefore, must decide, if it can so determine from the record, whether those Defendants have complied with the statute's requirements.

■ Turning first to Federated, Plaintiffs assert that Federated did not strictly comply with the statute because it failed to respond to notice of Plaintiffs' claim by registered or certified mail within thirty days. The documents in the file, together with the affidavit of Mark Katz, a claims examiner for Federated, indicate that Federated first received notice of Plaintiffs' claim, by letter dated November 19, 1986, on November 21, 1986. Federated responded to Plaintiffs' claim by its own letter dated December 22, 1986, which set forth in detail Federated's reasons for denying coverage. Plaintiffs contend that this December 22 letter was insufficient to comply with the statute's notice provisions because it was not sent by registered or certified mail.

Plaintiffs have filed the deposition testimony of Mr. Joseph Matri, claims supervisor for Federated, in support of their contention. At his deposition taken on March 4, 1988, Mr. Matri stated that he was unsure whether the December 22 letter was sent to Plaintiffs by certified mail. Subsequently, however, Federated submitted an affidavit of Mr. Matri, dated March 28, 1988, in which Mr. Matri testifies that based on his further review of the relevant files, he can now state that the letter was sent by registered mail. Attached to the affidavit are copies of the letter and postal markings indicating that it was sent by registered mail. In any event, Plaintiffs concede that they were on actual notice of Federated's position regarding the defense of the *Barras* claims. Even if Federated's response did not strictly comply with the statute, the Court concludes that since Plaintiffs were on actual notice of Federated's position, the legislative intent embod-

---

**4.** Plaintiffs concede that their contract with Defendant Pacific does not include a contractual duty to defend. While Plaintiffs do not address this issue with respect to Defendant Constitution, it is clear that it also has not obligated itself to defend Plaintiffs. The policy between

Plaintiffs and Constitution states: "The company at its own option may, but is not required to, participate in the investigation, settlement or defense of any claim or suit against the insured." (Exhibit B attached to Plaintiffs' complaint).

ied in the notice requirements of the statute has been effectuated. *See Pepper's Steel,* 668 F.Supp. at 1544. Federated, therefore, will not be charged with the responsibility to defend Plaintiffs on the basis of non-compliance with § 627.426.

Finally, a review of the file indicates that Reliance also complied with the requirements of § 627.426. Reliance first became aware of the claims against Plaintiffs when a "General Liability Loss Notice" was filed with it on May 19, 1986. Reliance responded to that notice by sending Plaintiffs, by certified mail, a reservation of rights letter dated June 4, 1986. On July 31, 1986, Reliance followed up its original response by sending Plaintiffs, again by certified mail, a letter denying coverage. The timing of these letters was in full compliance with § 627.426. Since Plaintiffs have not offered any evidence to contradict Reliance's contentions, no material fact remains at issue with respect to Reliance's compliance with § 627.426. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Accordingly, Plaintiffs' motion for summary judgment is DENIED and all Defendants' motions for summary judgment are GRANTED. The Clerk is instructed to enter judgment in favor of all Defendants and against Plaintiffs.

IT IS SO ORDERED.