TELETRONICS INTERNATIONAL, INC., Plaintiff,

v.

CNA INSURANCE COMPANY/TRANSPORTATION INSURANCE COMPANY, Defendants.

No. CIV.A.AW–03–1348.

United States District Court, D. Maryland, Southern Division.

Feb. 2, 2004.

Frederick N. Samuels and Maurice U. Cohn, Cohn and Samuels, for the Plaintiff.

William H. White, Jr., Bonner Kiernan Trebach and Crociata, for the Defendant.

## *MEMORANDUM OPINION*

WILLIAMS, District Judge.

Plaintiff Teletronics International, Inc. ("Teletronics") has brought suit against Defendant CNA Insurance Company/Transportation Insurance Company ("Transportation") for breach of contract. Pending before this Court are Plaintiff's Motion for Summary Judgment [14] and Defendant Transportation's Motion for Summary Judgment [15]. Specifically, Plaintiff and Defendant have moved for summary judgment of Plaintiff's claim that Transportation committed a breach of contract when it refused to defend a suit brought against Teletronics by Young Design, Inc. ("Young Design"). The Court has received opposition briefs for both motions, but the parties have elected not to submit reply briefs. The Court has reviewed the motions and oppositions and determined that no hearing is necessary. *See* D. Md. R. 105(6). The parties agree that no material facts are in dispute and that the issue is appropriate for resolution on summary judgment. For the reasons stated below, the Court will DENY Plaintiff's Motion for Summary Judgment and GRANT Defendant's Motion for Summary Judgment.

## I. *Factual Background*

The following facts are uncontroverted.[1]

### a. The Young Design *Complaint*

The origins of the instant case can be found in a dispute between Young Design, Inc. ("Young Design") and Teletronics. On June 14, 2003, Young Design, Inc. ("Young Design") filed a suit against Teletronics in the U.S. District Court for the Eastern District of Virginia (the *"Young Design* Suit"), alleging, among other things, that "... defendant [Teletronics] made unauthorized use of plaintiff's [Young Design's] Copyrighted Installation Manual, except for minor changes in the text, in connection with the manufacture and sale of its infringing wireless amplifier and in direct competition with plaintiff." JSUF, Exh. B ¶ 8. Young Design alleged that it entered into negotiations with Teletronics to explore whether to enter into a relationship "whereby defendant would purchase plaintiff's amplifiers and resell the products under the defendant's name, bundled with the defendant's own radio modems in the normal course of defendant's business." *Young Design* Complaint ¶ 10. During the course of a twelve-month relationship, Young Design disclosed confidential and proprietary information about its amplifiers, as well as an electronic, editable copy of its Installation Manual. *Id.* ¶ 14.

Young Design alleged that Teletronics produced "knock-off" versions of Young Design's amplifiers and that the installation manual for those products was nearly

---

**1.** These facts were taken from the Joint Statement of Undisputed Facts submitted by Plaintiff and Defendant (hereinafter "JSUF").

identical to Young Design's Installation Manual. *Id.* ¶ 25–26. The *Young Design* complaint requested relief for breach of contract, fraud and constructive fraud, misappropriation of trade secrets, copyright infringement, and trover.

### b. The Transportation Policy

Plaintiff purchased a Commercial General Liability ("CGL") insurance policy from Transportation that was effective from August 8, 1998 to August 8, 1999 and was renewed for the subsequent year (collectively "Transportation Policy"). Under the policy, Plaintiff received coverage for, among other things, "[a]dvertising injury caused by an offense committed in the course of advertising your goods, products, or services ...." Transportation Policy § A.1(2)(b). Transportation was obligated to "pay those sums that the insured becomes legally obligated to pay as damages because of ... 'advertising injury' ..." and Transportation had "the right and duty to defend the insured against any 'suit' seeking those damages." Transportation Policy § A.1.a. Furthermore, the policy defined "advertising injury" as follows:

"Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

Transportation Policy § F1. The policy also excluded coverage for "advertising injury" arising out of "[b]reach of contract, other than misappropriation of advertising ideas under an implied contract...." *Id.* § B.1.q.

### c. Teletronics's Claim for Coverage

Teletronics notified Transportation of the *Young Design* Suit in late June 2000. In a letter dated July 11, 2000, Transportation disclaimed coverage for the *Young Design* Suit. JSUF, Exh. D. The suit was tried in January 2001 and the court found for Teletronics on the trade secret count and for Young Design on the copyright infringement count. JSUF, Exh. E. Teletronics subsequently filed a motion for attorneys' fees and Young Design filed a motion for costs and attorneys's fees; both motions were denied by an order dated November 9, 2001. JSUF, Exh. H.

In November, 2000, Teletronics's counsel requested reconsideration of Transportation's denial of coverage under the Transportation Policy. JSUF, Exh. I. At this time, Teletronics first notified Transportation that the Installation Manual in dispute in the *Young Design* Suit was posted on Teletronics's website. After inspection and review of Teletronics's counsel's file for the *Young Design* Suit, Transportation again denied coverage and refused to defend Teletronics under the Transportation policy. JSUF, Exh. K.

Following the Fourth Circuits affirmation of the district court's decision to deny Teletronics's Motion for Attorneys' Fees, Teletronics again requested that Transportation reconsider its disclaimer of coverage. In a letter dated March 11, 2003, Transportation reconfirmed its denial of coverage and asserted that the posting of the manual on Teletronics's website would not alter Transportation's decision. JSUF, Exh. P.

Teletronics filed suit against Transportation in the Circuit Court for the Montgomery County alleging breach of contract, and the case was removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1332. Both Plaintiff and Defendant have requested resolution of this matter through summary judgment.[2] Accordingly, the Court will address arguments made in favor of and in opposition to both pending motions.

## II. *Standard of Review*

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Haavistola v. Comty. Fire Co. of Rising Sun, Inc.,* 6 F.3d 211, 214 (4th Cir.1993); *Etefia v. East Baltimore Comm. Corp.,* 2 F.Supp.2d 751, 756 (D.Md.1998). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine,* 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citations omitted). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330–31 (4th Cir.1998); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985).

In responding to a proper motion for summary judgment, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; 10A Charles Alan Wright et al., Federal Practice and Procedure § 2729.1 (3d.1998). The non-movant must show that he has access to admissible evidence for presentation at trial. *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548. In the absence of contradictory evidence showing a genuine dispute as to a material fact, the moving party is entitled to judgment as a matter of law. *See id.* at 317, 106 S.Ct. 2548. For the purposes of summary judgment, a genuine dispute exists if a reasonable jury could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. While the non-moving party must do more than merely raise some doubt as to the existence of a fact, the moving party ultimately bears the burden of demonstrating the absence of all genuine issues of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. *Discussion*

### a. *Duty to Defend Under Maryland Law* [3]

 Plaintiff's breach of contract claim is premised on Defendant's duty to defend Plaintiff in the *Young Design* Suit.

---

**2.** Jurisdiction is based on diversity of citizenship. *See* 28 U.S.C. § 1332.

**3.** The parties have not addressed choice of law and both Plaintiff and Defendant cite Maryland law as applicable in this suit.

The duty to defend is broader than the duty to indemnify. *See Utica Mut. Ins. Co., v. Miller,* 130 Md.App. 373, 381, 746 A.2d 935, 939 (2000); *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 408, 347 A.2d 842, 850 (1975). Under Maryland law, an insurance company must defend an insured if the underlying claim is potentially covered by the insurance policy. *Hartford Cas. Ins. Co. v. Chase Title, Inc.,* 247 F.Supp.2d 779, 780 (D.Md.2003). A court must perform the following analyses when deciding whether potential for coverage under the policy exists: "(1) determine the coverage and defenses 'under the terms and requirements of the insurance policy,' and (2) examine the allegations of the tort suit to determine whether the allegations 'bring the tort claim within the policy's coverage.'" *Id.* (citing *St. Paul Fire & Marine Ins. Co. v. Pryseski,* 292 Md. 187, 193, 438 A.2d 282, 285 (1981)). A court is not limited, however, to considering only the complaint; indeed, applicable extrinsic evidence is also critical to a court's determination. *Aetna Cas. & Sur. Co. v. Cochran,* 337 Md. 98, 651 A.2d 859, 865 (1995). Moreover, "any doubt as to whether there is a potentiality of coverage under the policy is to be resolved in favor of the insured." *Chantel Assocs. v. Mount Vernon Fire Ins. Co.,* 284 N.J.Super. 433, 656 A.2d 779 (1995).

Plaintiff maintains that Transportation has a duty to defend the *Young Design* Suit because the suit alleged copyright violations related to Plaintiff's manufacture and use of Young Design's copyrighted Installation Manual. Plaintiff further contends that the infringing Installation Manual was used in advertising because Teletronics posted the manual on its website and Teletronics's employees frequently recommended that inquiring customers obtain additional information about its products from the manual posted on the web site. Specifically, Plaintiff bases its claim

on Transportation Policy's coverage for "advertising injuries" arising out of: (1) "misappropriation of advertising ideas or style of doing business" and (2) "infringement of copyright, title, or slogan." *Transportation Policy* § F.1.(c), (d).

### b. Availability of Extrinsic Evidence and the Duty to Defend

■■ As both Plaintiff and Defendant agree, an insurer must consider both the terms of the contract and any extrinsic evidence when deciding if there is a potentiality for coverage under an insurance policy. *See, e.g., Aetna Cas. & Sur. Co.* 651 A.2d at 865. Defendant contends, however, that the extrinsic evidence must have been available for the insurer's consideration at the time the insurer made its determination. Defendant argues that, as a result, this Court should not consider extrinsic evidence made available *after* Transportation disclaimed coverage.

The Maryland Court of Appeals had stated, "[t]he insurer must defend its insured if it appears from a suit or other sources *available at the time* that there is a potential of liability under the policy." *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.,* 330 Md. 758, 625 A.2d 1021, 1024 n. 1 (1993) (emphasis added). *See also Harford Cty. v. Harford Mut. Ins. Co.,* 327 Md. 418, 610 A.2d 286, 295 n. 6 (1992) ("The insurer must defend its insured if it appears from the suit or other sources available *at the time defense is tendered* that there is a potential liability under the policy.") (emphasis added). In spite of this language, this Court is not convinced that Teletronics's failure to alert Transportation, prior to the conclusion of the underlying suit, that the Installation Manual was posted on Teletronics's web site prohibits this Court's consideration of this extrinsic evidence.

The Maryland Court of Appeals's reasoning in *Sherwood Brands, Inc. v. Hart-*

*ford Accident and Indem. Co.*, 698, A.2d 1078 (Md.1997) provides the Court some guidance in determining whether to consider extrinsic evidence not presented to Transportation during its original determinations of coverage under the policy. In *Sherwood Brands, Inc.*, the insurer claimed that it was not obligated to pay for defense expenses incurred before the insured gave the insurer notice of the covered claim.[4] The Maryland Court of Appeals held that the duty to defend arises when the claim is filed or the occurrence happens. *Sherwood Brands, Inc.*, 347 Md. 32, 698 A.2d 1078, 1083–84 (1997). As such, the court concluded that an insurer cannot disclaim coverage based solely on the insured's failure tell the insurer about the claim for which coverage is requested. The Maryland Court of Appeals further reasoned that while "the duty necessarily preexists ... the breach arises from the insurer's conduct following notice." *Id.* at 1084. Based on this reasoning, it follows that the failure to provide—or the unavailability of—relevant extrinsic evidence does not eradicate the insurer's duty to defend once the insurer is presented with that information.

■ The Maryland Court of Appeals points out, however, that if, regardless of insured's failure to notify, the insurer "would have declined the defense in any

event based on its mistaken conclusion that there was no potential coverage [ ] the insurer should not later be allowed to use the delay as a bar to reimbursing the insured for the reasonable expenses incurred in defending the covered claim." *Id.* The insurer may, nevertheless, relieve itself of the obligation to pay for the defense if the insurer establishes that it was prejudiced by the insured's failure to notify—i.e., that the defense's costs were unreasonable or "materially exceeded that which the insurer would likely have incurred" if it had actually defended the suit. *Id.*[5]

In the instant case, Transportation has not made this argument.[6] Rather, Transportation indicated that "the asserted posting of the copyright-infringing manual on Teletronics's web site would not alter Transportation's coverage decision." JSUF ¶ 5; JSUF, Exh. P. As a result, Plaintiff may claim that Defendant breached the contract when it disclaimed its duty to defend, for a third time, after being notified that Teletronics had posted the Installation on the web site. The Court must next determine whether there was a potentiality of coverage under the Transportation Policy based on both the Complaint and available extrinsic evidence.

*c. Defining "Advertising"*

■ Plaintiff argues that, regardless of whether the *Young Design* complaint al-

---

**4.** The court makes clear that the duty to notify arises from the insurance policy's language. *See Sherwood Brands, Inc.*, 698 A.2d at 1084. Likewise, the Transportation Policy required the insured "see to it that we are notified promptly in writing of an act, error, omission, or offense, which may result in a claim." Transportation Policy § V.A.2.a.

**5.** Indeed, the court in *Sherwood Brands Inc.* explained that, "in Maryland ... the duty to notify is merely a covenant that, absent a showing of prejudice, does not excuse the insurer from complying with its duty to de-

fend ...." *See Sherwood Brands, Inc.*, 698 A.2d at 1084.

**6.** Transportation has argued that the failure to notify Defendant of the extrinsic evidence violated Defendant's *right* to defend the suit. *See* Def. Transportation's Mem. in Supp. of Mot. For Summ. J. at 19–20. Transportation has not alleged, however, that the costs incurred by Teletronics in defense of the *Young Design* Suit were excessive, unreasonable, or "exceeded that which the insurer would likely have incurred" if notice had been received earlier.

leges acts that fall within "advertising injury" coverage, the copyright-infringing manual constituted "advertising" because it was posted on Teletronics's website. The Transportation Policy does not explicitly define "advertising," and, as a result, the Court must discern the term's meaning from Maryland law and authority from other jurisdictions.

In Maryland, insurance contracts are construed as a whole to ascertain the parties' intentions. *Cheney v. Bell Nat'l Life*, 315 Md. 761, 766–67, 556 A.2d 1135 (1989). Words are also accorded their "customary, ordinary, and accepted meaning," unless otherwise indicated. *Id.* Furthermore, if a reasonably prudent layperson would attach more than one meaning to the insurance policy's language, it is ambiguous. *Collier v. MD–Individual Practice*, 327 Md. 1, 607 A.2d 537 (1992); *Pacific Indem. v. Interstate Fire & Cas.*, 302 Md. 383, 488 A.2d 486 (1985). Finally, while Maryland does not require that an insurance policy be construed strongly against the insurer, this Court has recognized that if ambiguity remains after examination of extrinsic evidence, the policy will be construed against the insurer as the drafter of the instrument. *See Bushey v. Northern Assurance Co. of Amer.*, 362 Md. 626, 766 A.2d 598 (2001).

In the only published opinion applying Maryland law to interpret the duty to defend under an "advertising injury" clause, the Maryland Court of Appeals reasoned that "advertising" should be interpreted "within the normal meaning of the word," and held that, "advertising" does not include individual solicitation and, instead, requires "widespread distribution or announcements to the public." *Monumental Life Ins. Co. v. United States Fidelity and Guaranty Co.*, 94 Md.App. 505, 617 A.2d 1163, 1174 (1993) (holding that one-on-one solicitation of employees from a competing company is not "advertising"). This Court does not believe, however, that the Maryland Court of Appeals meant that *any* widely distributed information is "advertising." As a result of the dearth of authority interpreting Maryland law on this issue, this Court is guided by other jurisdictions that have provided more thorough analyses of the duty to defend suits alleging insurance policy coverage pursuant to CGL policies' "advertising injury" clauses.

"Advertising" has been defined as the "widespread distribution of promotional materials to the public at large." *Playboy Enterprises v. St. Paul Fire & Marine Ins. Co.*, 769 F.2d 425, 428–29 (7th Cir. 1985) (applying Illinois law). Courts have also defined "advertising" as the "public or at least widely disseminated solicitation or promotion," *MGM, Inc. v. Liberty Mut. Ins. Co.*, 17 Kan.App.2d 492, 839 P.2d 537, 540 (1992), and as "an idea for calling public attention to a product or business, especially by proclaiming desirable qualities so as to increase sales or patronage," *Atlantic Mut. Ins. Co. v. Badger Medical Supply Co.*, 191 Wis.2d 229, 528 N.W.2d 486, 489–90 (1995).

In line with these definitions, as well as the Maryland Court of Appeals's requirement that the term be interpreted "within the normal meaning of the word," this Court finds that posting the Installation Manual on a website did not make it advertising. The manual was not prominently displayed on the web site, *see JSUF, Ex. Q,* and its mere presence on the website is not sufficient to convert it into "advertising." To find otherwise would require this Court to term "advertising" anything that is posted on a company's website. While advertising and promoting a product may be one of a website's purposes, websites also provide useful information to current customers. This Court adopts the more natural reading of the

Transportation Policy's terms. This construal escapes the pitfalls outlined by the First Circuit:

> In the end, we are left to choose between two different concepts of 'advertising': the familiar bundle of business activities associated with that term and the far broader concept of inviting public intention, deliberately or not and by any means. Although the bare language of the policy is not conclusive, the more natural reading and the only one that avoids outlandish results is the former. It is worth adding that if the latter, open-ended definition were employed, it is hard to see how an insurer could even begin to calculate risks and set premiums.

*Ekco Group, Inc. v. The Travelers Indem. Co. of Illinois,* 273 F.3d 409, 415 (1st Cir. 2001) (holding that "advertising" in a CGL policy referred to conventional advertising, not the concept of inviting public attention).

■ In addition, the Court finds that Teletronics's referral of individual customers to the Installation Manual posted on the website does not support Plaintiff's arguments. The Maryland Court of Special Appeals has made clear that individual solicitations do not constitute "advertising". *Monumental Life Ins. Co.,* 94 Md. App. at 525–26, 617 A.2d at 1172–73.

#### d. Alleged Violations Under the Terms of the Transportation Policy

Teletronics's claims that Transportation's duty to defend the *Young Design* Suit arises from the insurance policy's coverage for advertising injuries. Preliminarily, the Court must note that, in order to fall under a CGL policy, the "advertising" must have a causal relationship with the plaintiff's claims in the underlying suit. The Fifth Circuit explained that courts "have required the insured to demonstrate that there is some connection between its advertising activity and the plaintiff's claim." *Sentry Ins. v. R.J. Weber Co., Inc.,* 2 F.3d 554, 557 (5th Cir.1993). *See also, Nat. Union Fire Ins. Co. v. Siliconix, Inc.,* 729 F.Supp. 77 (N.D.Cal.1989); *Lazzara Oil Co. v. Columbia Cas. Co.,* 683 F.Supp. 777, 780 (M.D.Fla.1988), *aff'd mem.,* 868 F.2d 1274 (11th Cir.1989); *Bank of the West v. Superior Court of Contra Costa County,* 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545, 560 (1992).

#### 1. Misappropriation of Advertising Ideas or Style of Doing Business

■ Plaintiff argues that Teletronics's posting of the Installation Manual on its website triggered Defendant's duty to defend under this section of the Transportation Policy. The Transportation Policy provides coverage for injury arising from "[m]isappropriation of advertising ideas or style of doing business ...." Transportation Policy § F.1.c. Maryland has not had occasion to construe the term "misappropriation." The Fourth Circuit has, however, recognized the ambiguity of the term. In *State Auto Prop. and Cas. Ins. Co. v. Travelers Indemnity Co. of Amer.,* the court explained that other jurisdictions were "unable to agree on how to interpret the term" and that, "[a]lthough it could refer specifically to the common law tort of misappropriation, it also could refer more generally to the wrongful acquisition of property." 343 F.3d 249, 256 (4th Cir. 2003). The Fourth Circuit reasoned that "misappropriation" under an insurance policy's "advertising injury" provision "refers to the wrongful acquisition of property." *Id.* at 257. In the instant case, the *Young Complaint* clearly makes claims based on the wrongful acquisition of property. As such, this analyses will turn on whether the underlying suit involved an advertising idea of style of doing business.

Plaintiff relies on a Third Circuit case which states: "When a complaint alleges that an insured misappropriates and uses trademarks or ideas in connection with marketing and sales and for the purpose of gaining customers, the conduct constitutes 'misappropriation of an advertising idea or style of doing business.'" *Cat Internet Svcs. v. Providence Washington Ins. Co.,* 333 F.3d 138, 142 (3d Cir.2003). Plaintiff contends that since the *Young Design* Complaint accused Teletronics of using the Installation Manual "in connection with the manufacture and sale of its infringing wireless amplifier and in direct competition with [Young Design],"[7] Transportation had a duty to defend the suit.

Defendant argues that the designs, product ideas, and installation manual at issue in the *Young Design* Suit are not "advertising ideas" or "styles of doing business," and therefore, the allegations in the *Young Design* Complaint do not call for coverage under § F.1.c. of the Transportation policy.[8]

The Court finds Transportation's arguments convincing. The *Young Design* suit does not allege violations of trade secrets, and, as a result, the Third Circuit's reasoning in *Cat Internet Svcs.* is not persuasive. Copyright and trademark claims are clearly distinguishable. Trademarks are, by their very nature, linked to commercial activity in ways that copyrights are now. Indeed, "[t]he purpose of trademarks is to prevent confusion in the marketplace," while copyrights "provide incentives to 'promote the progress of science and useful arts.'" Robert A. Gorman, COPYRIGHT 4 (Federal Judicial Center 1991). Furthermore, there is a split in the authority on this issue. *See, e.g., Advance Watch Co. Ltd., v. Kemper Nat'l Ins. Co.,* 99 F.3d 795, 802 (6th Cir.1996) ("'misappropriation of ideas or style of doing business' does not refer to ... trademark or trade dress infringement."); *Callas Enterprises, Inc. v. Travelers Indem. Co. of Amer.,* 193 F.3d 952, 957 (8th Cir.1999) (finding trademark infringement was not covered under the insurance policy).

Finally, as discussed above, the underlying complaints allegations do not explicitly or implicitly involve advertising injuries and the posting of thee Installation Manual on the website did not constitute advertising. Accordingly, there was no misappropriation of advertising ideas or style of doing business.[9]

## 2. Copyright Infringement

■ Plaintiff asserts that Transportation has a duty to defend the *Young Suit* because the suit involves injury arising from "infringement of copyright, title or slogan." *See* Transportation Policy § F.1.a.. In order to fall within the Transportation Policy's coverage, the infringement must be "committed in the course of advertising your goods, products, or ser-

---

**7.** *Young Design* Complaint ¶ 58.

**8.** Defendant relies solely on the language of the underlying complaint and does not consider the effect of extrinsic evidence. As stated above, this Court will consider extrinsic evidence relevant to the potentiality of coverage under the insurance policy.

**9.** As Defendant noted, courts have defined "style of doing business" as the manner in which a business is operated, rather than the substance of the business itself. *See, e.g., In-dustrial Molding Corp. v. Amer. Manufacturers Mut. Ins. Co.,* 17 F.Supp.2d 633, 638 (N.D.Tex.1998), *vacated as moot,* 22 F.Supp.2d 569 (N.D.Tex.1998); *Applied Bolting Tech. Products, Inc., v. United States Fid. & Guar. Co.,* 942 F.Supp. 1029, 1034 (E.D.Pa. 1996). Plaintiff has not argued that the underlying suit's complaint or extrinsic evidence demonstrate any links with the "style of doing business" language in the Transportation Policy.

vices ...." Transportation Policy § A.1(2)(b).[10] According to Plaintiff, the *Young Design* Complaint alleges that Teletronics committed copyright infringement by using the copyrighted materials as advertising and marketing tools. In particular, Plaintiff points to Young Design's request for damages and injunctive relief based on allegations that Teletronics "made unauthorized use of plaintiff's [Young Design] copyrighted installation manual ... in connection with the manufacture and sale of its infringing wireless amplifier and in direct competition with plaintiff [Young Design]." *Young Design* Complaint ¶ 58. 61. Defendant maintains that the allegations in the *Young Design* complaint do not concern advertising ideas and that, if the court determines that consideration of extrinsic evidence is appropriate, Teletronics's extrinsic evidence does not bring the suit within the Transportation Policy's coverage.

As noted above, the Court will consider extrinsic evidence to determine whether a potentiality of coverage existed. In addition, the Court has found that posting the Installation Manual on the web site did not make it advertising. Plaintiff's arguments are not convincing. Neither Young Design's allegation that the Installation Manual was used in the "manufacture and sale" of the amplifier nor the posting of the manual on Teletronics's website implicate advertising. Accordingly, there was no potentiality of coverage under the insurance policy and Transportation had no duty to defend the *Young Design* Suit.

### c. Breach of Contract Exclusion

 While the Court's prior analyses resolve this dispute, the Court finds it necessary to address Defendant's final argument for summary judgment. The Transportation Policy excludes coverage for "'[a]dvertising injury' arising out of ... [b]reach of contract, other than misappropriation of advertising ideas under an implied contract ...." Transportation Policy § B.1.q.(1). Defendant argues that this exclusion bars coverage for the *Young Design* suit because Young Design's injuries are alleged to arise from Teletronics breach of the OEM contract. In response, Plaintiff argues that since the Eastern District of Virginia expressly held there was no contract in the underlying suit, Defendant's argument fails.

The Maryland Court of Appeals has not construed the "arise out of" language in a breach of contract exclusion clause. The court has, however, interpreted this language in other insurance contract clauses. In *Northern Assurance Co. of Am. v. EDP Floors, Inc.*, the court construed a general business liability policy which excluded coverage from "bodily injury or property damage arising out of the ownership, maintenance, use, loading, or unloading of" automobiles, aircrafts, and watercrafts owned and operated by the insured or any of insured's employees. 311 Md. 217, 533 A.2d 682, 686 (1987). The Maryland Court of Appeals explained that "the words 'arising out of' must be afforded their common understanding, namely, to mean originating, growing out of, flowing from, or the like." *Id.* The court further concluded that "but for" causality was not necessary

**10.** Courts have also recognized the necessity of a causal relationship between the advertising activity and the plaintiff's claim. The Fifth Circuit explained that courts "have required the insured to demonstrate that there is some connection between its advertising activity and the plaintiff's claim". *Sentry Ins. v. R.J. Weber Co., Inc.*, 2 F.3d 554, 557 (5th Cir.1993). *See also, Lazzara Oil Co. v. Columbia Cas. Co.*, 683 F.Supp. 777, 780 (M.D.Fla. 1988), *aff'd mem.*, 868 F.2d 1274 (11th Cir. 1989); *Bank of the West v. Superior Court of Contra Costa County*, 2 Cal.4th 1254, 10 Cal. Rptr.2d 538, 833 P.2d 545, 560 (1992).

under the exclusion clause. In other words, the court reasoned that an injury could arise from various sources, but that the exclusion from coverage would apply as long as the clause covered at least one of the sources. *See also, Mass Transit Admin. v. CSX Transp., Inc.*, 349 Md. 299, 708 A.2d 298 (1998) (finding that proximate cause is not a predicate for "arising out of" coverage).

■ The Maryland Court of Special Appeals has, nevertheless, warned against the automatic application of this construction to different insurance policies. Indeed, the court stated that the phrase "arising out of" has no "single 'settled meaning' that applies to every insurance policy." *Philadelphia Indem. Ins. Co. v. Maryland Yacht Club, Inc.*, 129 Md.App. 455, 742 A.2d 79, 86 (1999). The court elaborated that "we construe such phrases 'on a contract by contract or case by case basis', and not by sweeping language saying that regardless of the exact provisions of the contract we shall interpret all similar, but not identical, contracts alike." *Id.* (citing *Nat'l Grange Mut. Ins. Co. v. Pinkney*, 284 Md. 694, 706, 399 A.2d 877 (1979) (discussing construction of omnibus clause in motor vehicle liability policy)). Accordingly, while guided by past interpretations of the "arising out of" language, this Court will also "examine the character of the contract, its purpose, and the facts and circumstances of the parties at the time of the execution." *Litz v. State Farm Fire and Cas. Co.*, 346 Md. 217, 695 A.2d 566, 569 (1997).

■ CGL polices are purchased by business owners "in an attempt to protect against losses that may result from unforeseen liability-imposing events or circumstances." *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 127 (La.2000). They " 'provide the insured with the broadest spectrum of protection for unintentional and unexpect-ed personal injury or property damage arising out of the conduct of the insured's business.' " *Westchester Fire Ins. Co. v. City of Pittsburg, Kan.*, 768 F.Supp. 1463, 1468 n. 5 (D.Kan.1991) (quoting Peters, *Insurance Coverage for Superfund Liability: A Plain Meaning Approach to the Pollution Exclusion Clause*, 27 Washburn L.J. 161, 166 (1987)). As a result, the policies do not cover the contractual liability of the insured. The breach of contract exclusion, however, is not intended to excuse the insurer from defending any action that alleges a breach of contract. Indeed, as Plaintiffs argue, "clever drafters could prevent an insured from obtaining coverage by merely alleging the existence of a contract." Pl. Opp. at 5. A "but for" causation test would prevent such abuse. In other words, the injury would "arise out of" a breach of contract if the advertising injury suffered by Young Design would not exist *but for* the breach of contract. Since the *Young Design* Complaint's causes of action for misappropriation of trade secrets, copyright infringement, and trover could stand independent from the breach of contract claim, they do not "arise out of" it. This construction aligns with Maryland's preference for construing "duty to defend" language against the insurer. *See Sherwood Brands, Inc.*, 698 A.2d at 1083 ("The duty to defend is primarily, of course, for the benefit of the insured.").

## IV. Conclusion

In conclusion, this Court finds that Defendant Transportation did not have a duty to defend Teletronics in the *Young Design* Suit. As such, Defendant did not commit a breach of contract when it disclaimed coverage under the Transportation Policy. Accordingly, the Court will deny Plaintiff's Motion for Summary Judgment and grant Defendant's Motions for Summary Judg-

ment. An Order consistent with this Opinion will follow.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, IT IS this 2nd day of February, 2004 by the United States District Court for the District of Maryland, hereby **ORDERED**:

1. That Plaintiff's Motion For Summary Judgment on The Issue of Defendants Duty to Defend Plaintiff [14] BE, and the same hereby IS, **DENIED**; AND;

2. That Defendant's Transportation Insurance Company's Motion For Summary Judgment [15] BE, and the same hereby IS, **GRANTED**; AND;

3. That this Case BE, and the same hereby IS, **CLOSED**; and

4. That the Clerk of the Court transmit copies of the Opinion and Order to all counsel of record.